# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---------------------------------------------------

| | | |
|---|---|---|
| ROMAG FASTENERS, INC., | : | Civil Action No. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **COMPLAINT** |
| | : | |
| FOSSIL INC., FOSSIL STORES I, INC., | : | |
| MACY'S, INC. and MACY'S RETAIL | : | |
| HOLDINGS, INC., | : | |
| | : | |
| Defendants. | : | November 22, 2010 |

---------------------------------------------------

Plaintiff ROMAG FASTENERS, INC. ("Romag"), for its complaint against Defendants FOSSIL INC., FOSSIL STORES I, INC., MACY'S, INC. and MACY'S RETAIL HOLDINGS, INC., through its attorneys, alleges as follows:

## NATURE OF THE ACTION AND THE PARTIES

1.     In this action, Romag seeks relief for acts of patent infringement, trademark infringement, false designation of origin, and unfair competition, under federal and state law.  This action arises under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.* and under the Lanham Act, Title 15 of the United States Code, and the laws of the State of Connecticut.

2.     Plaintiff Romag is a corporation organized and existing under the laws of the State of Connecticut and has an address at 257 Depot Road, Milford, Connecticut 06460. Romag has conducted and is conducting business in interstate commerce and in this judicial district.

3.     On information and belief, Fossil, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Richardson, Texas, and Fossil Stores I, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Richardson, Texas.  Fossil, Inc. and Fossil Stores I, Inc. are collectively referred to herein as "Fossil." Fossil operates a store in the State of Connecticut, operates other stores throughout the United States, and has conducted and is conducting business in interstate commerce and in this judicial district by selling and offering for sale products through its stores.

4.     On information and belief, Macy's, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Cincinnati, Ohio, and Macy's Retail Holdings, Inc. is a corporation organized and existing under the laws of the State of New York with its principal place of business in Cincinnati, Ohio. Macy's, Inc. and Macy's Retail Holdings, Inc. are collectively referred to herein as "Macy's." Macy's operates multiple stores in the State of Connecticut and throughout the United States and has conducted and is conducting business in interstate commerce and in this judicial district by selling and offering for sale products through its store.

### JURISDICTION AND VENUE

5.     This civil action arises under the Patent Laws, 35 U.S.C. § 1, et seq., the Lanham Act, 15 U.S.C. § 1051 et seq., and the laws of the State of Connecticut.  This Court has jurisdiction under 15 U.S.C. § 1121(a), 28 U.S.C. § 1331, 1332(a) and 1338(a).  The amount in controversy exceeds the sum or value of $150,000, exclusive of interest and costs.

6.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c).  A substantial part of the events giving rise to the claims occurred in this judicial district.

2

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**Romag's Patents And Trademark**

  7. On March 3, 1998, United States Letters Patent No. 5,722,126 ("the '126 Patent") was duly and lawfully issued to Romag for an invention entitled "Magnetic Snap Fasteners." A true and correct copy of the '126 Patent is attached hereto as Exhibit A.

  8. Romag designs, causes to be manufactured and sells magnetic snap fasteners, including those made pursuant to the claims of the '126 Patent, for use in connection with handbags and other accessories.

  9. For over a decade, Romag has been manufacturing and selling in interstate commerce magnetic snap fasteners under the mark ROMAG.

  10. Romag is the owner of a U.S. Trademark Registration No. 2,095,367 for the mark ROMAG for magnetic snap fasteners (hereinafter "the '367 Registration"). The '367 Registration is valid, subsisting and incontestable. A copy of the '367 Registration is attached hereto as Exhibit B.

  11. For over a decade, Romag continuously has used the name and mark ROMAG in interstate commerce in connection with sale, distribution, promotion and advertising of its magnetic snap fasteners.

  12. The ROMAG trademark has achieved widespread recognition among the relevant purchasing public and the trade.

  13. As such, the ROMAG trademark and the goodwill associated therewith is a valuable asset of Romag.

14.     Due to Romag's long use, extensive sales, and advertising and promotional activities, the ROMAG trademark has achieved widespread acceptance and recognition among the relevant purchasing public and the trade throughout the United States.

15.     The arbitrary and distinctive name and mark ROMAG identifies Romag as the source or origin of goods bearing, sold under, distributed and advertised in association with the name and mark and Romag enjoys valuable goodwill in its name and mark.

**Defendants' Activities**

16.     On information and belief, Fossil owns a chain of retail stores and is an internet retailer of consumer products, including handbags.

17.     On information and belief, Fossil makes, uses, imports, offers for sale and sells handbags under the brand name Fossil (the "Fossil Handbags") which use magnetic snap fasteners.  On information and belief, one of the customers of Fossil and an outlet for the retail sale of Fossil Handbags is Macy's.

18.     On information and belief, Macy's owns a large chain of department stores and is an Internet retailer of consumer products, such as clothing, footwear, accessories, furniture, jewelry, beauty products, electronics and housewares.

19.     On information and belief, Macy's uses, offers for sale and sells handbags under numerous brands, including, but not limited to Fossil Handbags, which use magnetic snap fasteners.

20.     Long after Romag adopted and used its well established trademark, and long after the ROMAG mark had acquired distinctiveness among the relevant purchasing public and the trade, Defendants, without authorization from Romag, adopted and used in interstate

commerce the name and mark ROMAG in connection with competing magnetic snap fasteners, which are incorporated into its products.

21.    Defendants adopted the trademark ROMAG without Romag's express or implied consent.

22.    Defendants' use of the name and mark ROMAG is likely to cause confusion, mistake and deception among the relevant purchasing public and the trade, who will believe that the magnetic snap fasteners offered by Defendants in connection with the sale of their products, including the Fossil Handbags, are actually Romag's magnetic snap fasteners, or are in some way associated with or approved by Romag, or that such magnetic snap fasteners otherwise originate from the same source as do Romag's magnetic snap fasteners. Defendants' use of the mark ROMAG is likely to cause significant confusion, mistake and deception among the relevant purchasing public and the trade.

23.    In addition, Defendants have falsely marked the magnetic snap fasteners with the designation "USA Pat 5722126."

24.    Romag has been irreparably injured and monetarily damaged by Defendants' acts. Romag has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF

### Patent Infringement, 35 U.S.C. § 271

25.    Romag repeats and realleges the allegations contained in Paragraphs 1 through 24.

26.    Defendants have committed acts of infringement of the '126 Patent, and continue to commit such acts of infringement, in this Judicial District and elsewhere, by making,

using, importing, selling and offering for sale handbags, including the Fossil Handbags, containing magnetic snap fasteners which come within the claims of the '126 Patent.

27.     Defendants have had actual and constructive knowledge of the '126 Patent, but nonetheless have infringed and continue to infringe those patents in willful and deliberate disregard of Romag's rights therein and will continue to infringe the patents unless enjoined by this Court.

28.     As a direct and proximate cause of Defendants' infringement, as alleged above, Romag has suffered damages in the form of lost profits, lost sales and lost opportunities.

## SECOND CLAIM FOR RELIEF

### Federal Trademark Infringement, 15 U.S.C. § 1114(1)

29.     Romag repeats and realleges the allegations contained in Paragraphs 1 through 24.

30.     On information and belief, Defendants knowingly adopted and used the name and mark ROMAG with full and actual knowledge of Romag's distinctive mark.

31.     Defendants adopted the name and mark ROMAG with the intent to capitalize on the goodwill generated by Romag's extensive and widespread use and reputation.

32.     Defendants' unauthorized importation, use, distribution, offer for sale, advertising, and/or sale of goods, including the Fossil Handbags, bearing a reproduction, counterfeit, copy, or colorable imitation of the trademark ROMAG is likely to cause confusion, mistake or deception as to origin, sponsorship or approval and therefore constitutes trademark infringement, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

33.   Defendants' complained-of acts are willful and have damaged Romag, and unless restrained will continue to damage Romag, including causing irreparable injury to its reputation and goodwill.  Romag has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

34.   Romag repeats and realleges the allegations contained in Paragraphs 1 through 24.

35.   On information and belief, Defendants knowingly adopted and used the name and mark ROMAG with full and actual knowledge of Romag's distinctive mark.

36.   Defendants adopted the name and mark ROMAG with the intent to capitalize on the goodwill generated by Romag's extensive and widespread use and reputation.

37.   Defendants' unauthorized importation, use, distribution, offer for sale, advertising and/or sale of goods, including the Fossil Handbags, bearing the trademark ROMAG and the designation "USA Pat 5722126" constitutes a false designation of origin that is likely to cause confusion, mistake or deception as to origin, sponsorship or approval and therefore constitutes unfair competition, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

38.   Defendants' unauthorized importation, use, distribution, offer for sale, advertising and/or sale of goods, including the Fossil Handbags, bearing the trademark ROMAG and the designation "USA Pat 5722126" constitutes a false representation that is likely to cause confusion, mistake and/or deceive the consuming public as to the affiliation and/or connection of Defendants' products as originating from or being sponsored by Romag when, in fact, they are not.

39.     On information and belief, Defendants adopted and used the name and mark ROMAG with full and actual knowledge of Romag's distinctive mark.

40.     Defendants' complained-of acts are willful and have damaged Romag, and unless restrained will continue to damage Romag, including causing irreparable injury to its reputation and goodwill.  Romag has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

Unfair Competition And Trademark Infringement Under Connecticut Common Law

41.     Romag repeats and realleges the allegations contained in Paragraphs 1 through 24 and Paragraphs 29 through 40.

42.     By reason of the foregoing acts, Defendants have violated and infringed Romag's common law rights in its trademark ROMAG and have competed unfairly with Romag by use of the designation "USA Pat 5722126," in violation of the common law of the State of Connecticut.

43.     Defendants' complained-of acts are willful and have damaged Romag, and unless restrained will continue to damage Romag, including causing irreparable injury to its reputation and goodwill.  Romag has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

Violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Con. Gen. Stat. § 42-110b

44.     Romag repeats and realleges the allegations contained in Paragraphs 1 through 24 and Paragraphs 29 through 40.

45.     By reason of the foregoing acts, Defendants have engaged in unfair or deceptive business practices in violation of CUTPA in the following manner:

a.      By the unauthorized importation, use, distribution, offer for sale, advertising, and/or sale of goods, including the Fossil Handbags, bearing a reproduction, counterfeit, copy, or colorable imitation of the trademark ROMAG; and

b.      By the unauthorized importation, use, distribution, offer for sale, advertising, and/or sale of goods, including the Fossil Handbags, bearing a reproduction, counterfeit, copy, or colorable imitation of the trademark ROMAG and the designation "USA Pat 5722126."

46.     Defendants' complained-of acts have damaged Romag, and unless restrained will continue to damage Romag, including causing irreparable injury to its reputation and goodwill.  Romag has no adequate remedy at law.

WHEREFORE, Romag demands judgment against Defendants as follows:

A.     Adjudging that United States Patent No. 5,722,126 is valid and has been infringed by Defendants;

B.     Awarding Romag its damages and lost profits arising out of Defendants' activities which infringe United States Patent No. 5,722,126, and that such damages and lost profits be trebled by reason of Defendants' willful and deliberate infringement, together with interest from the date of infringement;

C.     Preliminarily and permanently enjoining Defendants, their officers, directors, agents, servants, employees, attorneys, parents and subsidiaries, and all those persons, firms or corporations acting in concert and participation with them, from further infringing United States Patent No. 5,722,126;

D.     Preliminarily and permanently enjoining Defendants, their officers, directors, agents, servants, employees, attorneys, and all those persons, firms or corporations acting in concert and participation with them, from any unlawful importation, manufacture, advertisement, promotion, offer for sale, sale, purchase, distribution, movement or transfer of, or any other involvement with goods bearing the trademark ROMAG, or any colorable imitation of Romag's distinctive trademark;

E.     Finding that Defendants have infringed the trademark ROMAG and have engaged in acts of unfair competition by using the designation "USA Pat 5722126;"

F.     Ordering an accounting by Defendants to Romag of any profits gained from the sale of their goods bearing the trademark ROMAG, or sold in association with the trademark, or any other colorable imitation of the trademark ROMAG, and with Romag's patent number, under 15 U.S.C. § 1117;

G.    Awarding Romag statutory damages pursuant to 15 U.S.C. § 1125(c);

H.    Awarding damages to Romag in an amount yet to be determined, including damages for injury to Romag's business reputation and goodwill and all other damages arising out of Defendants' acts of infringement, false designation of origin, and unfair competition, under 15 U.S.C. § 1117;

I.    Entering an award of three times the amount of Romag's damages or Defendants' profits, whichever is greater, under 15 U.S.C. § 1117;

J.    Ordering destruction of all infringing and unlawfully marked products and materials, pursuant to 15 U.S.C. § 1118;

K.    Awarding damages to Romag in an amount yet to be determined, including damages for injury to Romag's business reputation and goodwill and all other damages arising out of Defendants' acts of infringement, false designation of origin, and unfair competition, pursuant to CUTPA, Conn. Gen. Stat. § 42-110g(a);

L.    Awarding punitive damages to Romag under CUTPA, Conn. Gen. Stat. § 42-110g(a);

M.    Awarding Romag its costs and attorneys' fees under CUTPA, Conn. Gen. Stat. § 42-110g(d); and

N.    Awarding such other and further relief as the Court may deem just and proper.

ROMAG FASTENERS, INC.

By:___*s/David R. Schaefer*_____
David R. Schaefer (Ct 04334)
BRENNER, SALTZMAN & WALLMAN LLP
271 Whitney Avenue
New Haven, CT 06511
Tel.: (203) 772-2600
Fax: (203) 562-2098
Email: dschaefer@bswlaw.com

And

Norman H. Zivin (Ct 08103)
COOPER & DUNHAM LLP
30 Rockefeller Plaza
New York, New York 10112
Tel.: (212) 278-0400
Fax: (212) 391-0525
Email: nzivin@cooperdunham.com
Attorneys for Plaintiff

B23883.doc

# Exhibit A



US005722126A

# United States Patent [19]

**Reiter**

[11] Patent Number: **5,722,126**

[45] Date of Patent: **Mar. 3, 1998**

[54] **MAGNETIC SNAP FASTENERS**

[75] Inventor: **Howard J. Reiter**, Milford, Conn.

[73] Assignee: **Romag Fasteners Inc.**, Orange, Conn.

[21] Appl. No.: **651,522**

[22] Filed: **May 22, 1996**

[51] Int. Cl.$^6$ ................................................ A44B 21/00
[52] U.S. Cl. ................................................ 24/303
[58] Field of Search ........................ 24/303, 66.1, 683,
24/684, 689, 691, 114.2; 248/206.5; 292/251.5;
335/285

[56]        **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D. 247,468 | 3/1978 | Morita . |
| 338,269 | 3/1886 | Hovey ................................ 24/114.2 |
| 1,782,165 | 11/1930 | Ford ................................ 24/691 |
| 4,021,891 | 5/1977 | Morita . |
| 4,453,294 | 6/1984 | Morita . |
| 4,736,494 | 4/1988 | Marchesi ......................... 24/691 X |

| | | |
|---|---|---|
| 5,042,116 | 8/1991 | Ossiani . |
| 5,572,773 | 11/1996 | Baur ................................ 24/303 |
| B1 4,453,294 | 5/1991 | Morita . |
| B2 4,021,891 | 8/1986 | Morita . |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 58-108714 | 6/1983 | Japan | ................ 335/285 |
| 58-145106 | 8/1983 | Japan | ................ 335/285 |
| 59-18615 | 1/1984 | Japan | ................ 335/285 |
| 59-119804 | 7/1984 | Japan | ................ 335/285 |
| 62-55906 | 3/1987 | Japan | ................ 335/285 |
| 8-78230 | 3/1996 | Japan . | |
| 1519246 | 7/1978 | United Kingdom | ....... 335/285 |

*Primary Examiner*—James R. Brittain
*Attorney, Agent, or Firm*—Cooper & Dunham LLP

[57]            **ABSTRACT**

A magnetic snap fastener for releasably connecting two
pieces of material. There is a tubular or partially sealed
hollow stem with a central opening. The stem fits into a hole
in a magnet to connect each of two sections of the fastener.

3 Claims, 8 Drawing Sheets





FIG. 1a

FIG. 1b



FIG. 2a

FIG. 2b

FIG. 3a

FIG. 3b

FIG. 4a

FIG. 4c

FIG. 4b









FIG. 5a          FIG. 5b          FIG. 6a   FIG. 6b



FIG. 8



FIG. 7

**U.S. Patent**     Mar. 3, 1998     Sheet 5 of 8     **5,722,126**



FIG. 9a          FIG. 9b

FIG. 10a          FIG. 10b

FIG. 11a          FIG. 11b



FIG. 12a



FIG. 12b



FIG. 13



FIG. 14



FIG. 15a



FIG. 15b



FIG. 16a

FIG. 16b

FIG. 17a

FIG. 17b

FIG. 18a

FIG. 18b

5,722,126

| 1 | 2 |

## MAGNETIC SNAP FASTENERS

### BACKGROUND

#### 1. Field of the Invention

The instant invention relates to magnetic snap fasteners. More particularly, the instant invention relates to a magnetic snap fastener with a first half having a ring-shaped magnet and a second half having a tubular or partially sealed snap alignment means for insertion within the central hole in the ring-shaped magnet.

#### 2. Description of Prior Art

Several patents have issued which show and describe magnetic snap fasteners. U.S. Pat. No. 4,453,294, issued to Tamao Morita, entitled "Engageable Article Using Permanent Magnet", as reexamined and confirmed under Reexamination Certificate B1 4,453,294 (hereinafter "Morita '294") relates to a magnetic closure wherein a solid projection on a first half of the closure is adapted to fit within a hole in a circular magnet attached to the second half of the closure. Additionally, the second half of the closure, to which the circular magnet is attached, is solid in the area beneath the central hole in the circular magnet.

Likewise, U.S. Pat. No. 4,021,891, issued to Tamao Morita, entitled "Magnetic Lock Closure", as reexamined and confirmed under Reexamination Certificate B2 4,021,891 (hereinafter "Morita '891") relates to a magnetic closure wherein a solid projection on a first half of the closure is adapted to fit within a hole in a circular magnet attached to the second half of the closure. Again, the second half of the closure, to which the circular magnet is attached, is solid in the area beneath the central hole in the circular magnet. The Morita '294 and Morita '891 patents essentially describe the same product.

Finally, British Patent Specification No. 1,519,246, published Jul. 26, 1978 (hereinafter "Aoki") discloses a magnetic closure wherein a projection on a first half of the closure is adapted to fit within a hole in a circular magnet attached to the second half of the closure. The projection is specifically described as a sealed extension of the first half of the closure. Again, on the second half of the closure, to which the circular magnet is attached, there is a solid surface in the area beneath the central hole in the circular magnet.

The solid projections of Morita '294 and Morita '891 and the sealed projection of Aoki help to align the first half and the second half of the closures during the closure process. However, these closures have certain disadvantages. They do not permit automated manufacturing such as the use of a light activated alignment means used for the assembly of the component parts. This allows faster assembly rates and reduced costs with good quality. Further, these solid and sealed projections do not permit the use of a quick and efficient coating process, whereby a number of closures are simultaneously exposed to coating while being manipulated on a string or wire passed through a hole that is coaxial with the projection.

### SUMMARY OF THE INVENTION

It is therefore an object of the present invention to provide a magnetic snap fastener which can be easily fabricated for sale at a reasonable price.

It is a further object of the present invention to provide a magnetic snap fastener with at least one closure half having tubular alignment means with a hole therethrough that may be used to support the closure half during a coating process. The tubular alignment means of the instant invention not only provides a means to support a closure half while it is being coated, but it also maximizes the magnetic attraction force between a male half and a female half of a snap incorporating such an advantageous coating process support means.

It is a further object of the present invention to provide a magnetic snap fastener with at least one closure half having tubular alignment means with a hole therethrough, the hole being used to allow a light source (such as an infrared light source, for example) to direct a beam of light through the closure half to help align the closure half while it is being attached to a piece of material. The tubular alignment means of the instant invention not only provides a means to permit the passage of light through a closure half, but it also maximizes the magnetic attraction force between a male half and a female half of a snap incorporating such an advantageous light passage feature.

These and other advantages will become apparent from the detailed description accompanying the claims and attached drawing figures.

### DESCRIPTION OF THE DRAWINGS

FIG. 1a is a perspective view showing a first embodiment of the magnetic snap fastener of the invention as applied to pieces of material and FIG. 1b is a cross-sectional view of a first embodiment of the instant invention;

FIGS. 2a and 2b are a top view and a side cut-away view, respectively, of the magnetic ring of the first embodiment;

FIGS. 3a and 3b are a top view and a side cut-away view, respectively, of the first and second base washers of the first embodiment;

FIGS. 4a, 4b, and 4c are a side view and a plan view, respectively, of the legs of the first embodiment;

FIGS. 5a and 5b are a top view and a side cut-away view, respectively, of the non-magnetic cover of the first embodiment;

FIGS. 6a and 6b are a top view and a side cut-away view, respectively, of the tubular stems of the first embodiment;

FIG. 7 is a cross-sectional view of a second embodiment of the instant invention;

FIG. 8 is a cross-sectional view of the male section of the second embodiment attached to a piece of material;

FIGS. 9a and 9b are a top view and a side cut-away view, respectively, of the magnetic ring of the second embodiment;

FIGS. 10a and 10b are a top view and a side cut-away view, respectively, of the first and second base washers of the second embodiment;

FIGS. 11a and 11b are a top view and a side cut-away view, respectively, of the non-magnetic cover of the second embodiment;

FIGS. 12a and 12b are a top view and a side cut-away view, respectively, of the tubular stems of the second embodiment;

FIG. 13 is a cross-sectional view of a third embodiment of the instant invention;

FIG. 14 is a cross-sectional view of the male section of the third embodiment attached to a piece of material;

FIGS. 15a and 15b are a top view and a side cut-away view, respectively, of the magnetic ring of the third embodiment;

FIGS. 16a and 16b are a top view and a side cut-away view, respectively, of the first and second base washers of the third embodiment;

5,722,126

3

FIGS. 17a and 17b are a top view and a side cut-away view, respectively, of the non-magnetic cover of the third embodiment; and

FIGS. 18a and 18b are a top view and a side cut-away view, respectively, of the tubular stems of the third embodiment.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring now to FIGS. 1a and 1b, an apparatus according to a first preferred embodiment of the invention is shown in which the female section 3 and the male section 5 of magnetic snap fastener 1 are separated from one another. Female section 3 and male section 5 are adapted to mate so as to form a complete fastener.

The female section 3 includes a first base washer 7 with first side 7a, opposite facing second side 7b and central hole 7c. Tubular stem 9 is circular in cross-section and has a central hole 9c. Tubular stem 9 also has a wide diameter section 9a and a narrow diameter section 9b and is insertable into the hole 7c in base washer 7 from base washer first side 7a. The distal end of the narrow diameter section 9b is rolled over to affix attachment legs 11 adjacent to the second side 7b of base washer 7. Preferably, the legs 11 are not rigidly secured so as to allow them to rotate with respect to base washer 7. This allows coating solutions to reach all surfaces thereby giving greater corrosion protection.

Magnetic ring 13 is held adjacent to first side 7a of first base washer 7 by non-magnetic cover 15, which has a top 15a and a side wall 15b. Flange 15c helps contain magnetic ring 13 in place within the cover 15 and continuous flange 15d holds the cover in place relative to the first base washer 7. The continuous flange 15d holds the cover 15 in place more securely than if discrete prongs or tabs are used. Non-magnetic cover 15 may be made of brass to enhance the appearance of the fastener. Preferably, flange 15d is continuous about the periphery of cover 15 so that the cover is not easily removable and lies flat against the piece of material. Magnetic ring 13 is toroidal in shape and has a central hole 13a larger than the outside diameter of the wide diameter section 9a of tubular stem 9. Since tubular stem 9 and non-magnetic cover 15 have central holes 9c and 15c, respectively, they are substantially axially aligned with central hole 7c of first base washer 7.

Turning now to male section 5 of magnetic snap 1, it is seen that second tubular stem 19 connects second base washer 21 to attachment legs 23 in a manner similar to that used in connection with the female section 3. Here again, second tubular stem 19 has a central hole 19a that is substantially axially aligned with central hole 21a of second base washer 21. The attachment legs 23 are preferably not rigidly secured so that they may rotate with respect to the second base washer 21. This allows coating solutions to reach all surfaces thereby giving greater corrosion protection.

As is clear from FIGS. 1a and 1b, second tubular stem 19 is insertable into hole 15e of non-magnetic cover 15. Due to the force of the magnetic ring 13, the male section 5 and female section 3 snap together. Legs 11 and 23 may, of course, be attached to two respective pieces of material 2a and 2b. Thus, the two pieces of material 2a and 2b are attached when the female section 3 and the male section 5 are snapped together. Moreover, the continuous flange 15d of female section 3 contacts the piece of material 2a around substantially the entire perimeter of the female section 3, providing a superior cosmetic appearance as compared to

4

the use of discrete prongs or tabs to hold the cover 15 in place, which would raise the bulk of the female section 3 above the piece of material 2a.

FIGS. 2a and 2b show a top view and a side cut-away view, respectively, of the magnetic ring 13. FIGS. 3a and 3b show a top view and a side cut-away view, respectively, of both the first and second base washers 7 and 21. FIGS. 4a, 4b, and 4c show side views and a plan view, respectively, of both the legs 11 and 23. FIGS. 5a and 5b show a top view and a side cut-away view, respectively, of the non-magnetic cover 15. FIGS. 6a and 6b show a top view and side cut-away view, respectively, of both the tubular stems 9 and 19. It is a particular feature of this embodiment of the invention that the base washers, legs, and tubular stems are identical on both the female and male sections of the fastener. This reduces the number of different parts needed to make a complete assembly. The axially aligned holes in the components are one distinguishing feature of the invention.

It is important that each of the openings are in axial alignment. Thus, central holes 7c, 9c, 13a, 15e, 19a, and 21a form a straight path. This path should not be too large in diameter. For example, the diameter should be about 0.006 to 0.125 inch.

Referring now to FIG. 7, an apparatus according to a second preferred embodiment of the invention is shown in which the female section 103 and the male section 105 of magnetic snap 101 are separated from one another. Female section 103 and male section 105 are adapted to mate to form a complete snap fastener. Magnetic snap fastener 101 is a rolled rivet type of fastener.

The female section 103 includes a first base washer 107 with first side 107a, opposite facing second side 107b and central hole 107c. Tubular stem 109 is circular in cross-section and has a wide diameter section 109a, a medium diameter section 109b, a narrow diameter section 109c, and a central hole 109d. Tubular stem 109 may be inserted into the central hole 107c from base washer first side 107a. The distal end of the narrow diameter section 109c extends outward from the base washer 107 to engage first attachment washer 110, as shown more clearly in FIG. 8 and as discussed below. There are no legs in this embodiment to attach the fastener to pieces of material. Rather, the fasteners are attached by the rolled rivet connectors.

Magnetic ring 113 is held adjacent to first side 107a of first base washer 107 by non-magnetic cover 115, which has a top 115a and a side wall 115b. Flange 115c helps contain magnetic ring 113 in place within the cover 115 and continuous flange 115d holds the cover in place relative to the first base washer 107. Magnetic ring 113 is toroidal in shape and has a central hole 113a larger than the outside diameter of the wide diameter section 109a of tubular stem 109. Tubular stem 109 and non-magnetic cover 115 have central holes 109d and 115e, respectively, which are substantially axially aligned with hole 107c of first base washer 107.

Turning now to male section 105 of magnetic snap 101 it is seen that second tubular stem 119, including wide section 119a, medium section 119b, and narrow section 119c, is insertable through hole 121a of second base washer 121 in a manner similar to that used in connection with the female section 103. Here again, second tubular stem 119 has a central hole 119d that is substantially axially aligned with central hole 121a of second base washer 121. Moreover, as described in connection with the female section 103, the distal end of narrow diameter section 119c extends outward from the second base washer 121 to engage second attach-

5,722,126

5

ment washer **123**, as shown more clearly in FIG. 8 and as discussed below.

FIG. 8 shows male section **105** attached to a piece of material **125** held between second base washer **121** and second attachment washer **123**. As seen in FIG. 8, tubular stem **119** has section **119e** rolled over to hold base washer **123** in place. Female section **103** is attached to a piece of material in a similar manner. Thus, the mating of female section **103** and male section **105** results in attachment of the two pieces of material.

FIGS. 9a and 9b show a top view and a side cut-away view, respectively, of the magnetic ring **113**. FIGS. 10a and 10b show a top view and a side cut-away view, respectively, of both the first and second base washers **107** and **121**. FIGS. 11a and 11b show a top view and side cut-away view, respectively, of the non-magnetic cover **115**. FIGS. 12a and 12b show a top view and a side cut-away view, respectively, of both the tubular stems **109** and **119**. Once again, several of these components are identical so as to provide for easy assembly and to reduce the cost of the finished product.

Referring now to FIG. 13, an apparatus according to a third preferred embodiment of the invention is shown in which the female section **203** and the male section **205** of magnetic snap **201** are separated from one another. Female section **203** and male section **205** are designed to unite to form a magnetic snap fastener of the Kwik-rivet style.

The female section **201** includes a first base washer **207** with first side **207a**, oppositely facing second side **207b**, and central hole **207c**. Tubular stem **209**, which is circular in cross-section and which has a wider diameter section **209a**, a medium diameter section **209b**, and a narrow diameter section **209c**, is insertable into the central hole **207c** from base washer first side **207a**. The distal end of the narrow diameter section **209c** extends outward from the base washer **207** to engage first rivet cap **210**, as shown more clearly in FIG. 14 and as discussed below. There are no legs in this embodiment to attach the fastener to the pieces of material. Rather, the fasteners are attached by the Kwik-rivet connectors. The rivet cap **210** may have a decorative surface or embossing.

Magnetic ring **213** is held adjacent to first side **207a** of first base washer **207** by non-magnetic cover **215**, which has a top **215a** and a side wall **215b**. Flange **215c** helps contain magnetic ring **213** in place within the cover **215** and continuous flange **215d** holds the cover in place relative to the first base washer **207**. Magnetic ring **213** is toroidal in shape and has a central hole **213a** larger than the outside diameter of the wide diameter section **209a** of tubular stem **209**. Tubular stem **209** and non-magnetic cover **215** have central holes **209c** and **215e**, respectively, which are substantially axially aligned with hole **207c** of first base washer **207**.

Turning now to male section **205** of magnetic snap **201**, it is seen that second tubular stem **219**, including wide section **219a**, medium section **219b**, and narrow section **219c**, is insertable through hole **221a** of second base washer **221** in a manner similar to that used in connection with the female section **203**. Here again, second tubular stem **219** has a central hole **219d** that is substantially axially aligned with central hole **221a** of second base washer **221**. Moreover, as described in connection with the female section **203**, the distal end of narrow diameter section **219c** extends outward from the base washer **207** to engage second rivet cap **223**, as shown more clearly in FIG. 14 and as discussed below.

FIG. 14 shows male section **205** attached to a piece of material **225** held between second base washer **221** and second rivet cap **223**. As seen in FIGS. 13 and 14, tubular

6

stem **219** has a collapsible bump that is deformed by attachment of the second rivet cap **223** to cause the distal end of the tubular stem **219** to lock to the inside of the second rivet cap **223** to hold material **225**. Female section **203** is attached to a piece of material in a similar manner.

FIGS. 15a and 15b show a top view and a side cut-away view, respectively, of the magnetic ring **213**. FIGS. 16a and 16b show a top view and a side cut-away view, respectively, of both the first and second base washers **207** and **221**. FIGS. 17a and 17b show a top view and a side cut-away view, respectively, of the non-magnetic cover **215**. FIGS. 18a and 18b show a top view and a side cut-away view, respectively, of both the tubular stems **209** and **219**. Several of these components are identical for the reasons previously discussed.

The invention has practical utility in the fastening of pieces of material such as leather or simulated leather, for example, in the manufacture of handbags, wallets, backpacks, and the like.

The improved fasteners of the invention are easily finished such as by coating processes. Because there is a hole through each non-solid male and female section, the closures may be threaded on a wire and rapidly processed. The fasteners, because they have a hole therethrough, may be easily assembled using automatic positioning devices. For example, an infrared light source such as a laser alignment beam may be used to direct light through the holes to align the closures when they are being assembled in the manufacturing process, improving the quality of the parts, speeding assembly, and reducing cost. The axially aligned central holes do not detract from the magnetic attractive force provided by the magnetic ring.

Although the present invention is described by reference to particular embodiments thereof, many changes and modifications of the invention may become apparent to those skilled in the art without departing from the spirit and scope of the invention, which is only limited by the appended claims. For example, the tubular stems may be replaced by hollow stems that are open at one end, that is, they are partially hollow but not solid. Therefore, the embodiments shown and described are only illustrative, not restrictive.

What is claimed is:

1. A magnetic snap fastener for releasably connecting a first surface and a second surface comprising:

(a) a female section, having

a first base washer defining a first hole substantially in the center of the first base washer;

a magnetic ring defining a second hole substantially in the center of the magnetic ring;

a non-magnetic cover defining a third hole substantially in the center of the cover and having a continuous peripheral flange, the cover being mounted to the first base washer by the continuous peripheral flange whereby the magnetic ring is held captively between the first base washer and the cover by the first base washer and the cover and whereby the first, second, and third holes are substantially axially aligned;

a first tubular stem with a fourth hole therethrough and substantially in the center thereof, the first tubular stem extending through the first and second holes, whereby the first, second, third, and fourth holes are substantially axially aligned; and

first attachment means affixed to the first base washer by the first tubular stem and adapted for attachment to the first surface;

5,722,126

7

(b) a male section, having

a second base washer defining a fifth hole substantially in the center of the second base washer;

a second tubular stem with a sixth hole therethrough and substantially in the center thereof, the second tubular stem extending through the fifth hole, whereby the fifth and sixth holes are substantially axially aligned; and

second attachment means affixed to the second base washer by the second tubular stem and adapted for attachment to the second surface;

(c) whereby insertion of the second tubular stem into at least the second and third holes creates a magnetic force which releasably connects the female and male sections and hence the first and second surfaces attached to the first and second attachment means;

(d) wherein the first attachment means comprises a first pair of legs and the second attachment means comprises a second pair of legs;

(e) wherein the first pair of legs is mounted to the first base washer by the first tubular stem and the second pair of legs is mounted to the second base washer by the second tubular stem; and

(f) wherein the first pair of legs is rotatable with respect to the first base washer and second pair of legs is rotatable with respect to the second base washer.

2. A female section of a magnetic snap fastener for releasably connecting a first surface to which the female section of the magnetic snap fastener is attached and a second surface to which a male section of the magnetic snap fastener is attached, comprising:

a base washer defining a first hole substantially in the center of the base washer;

a magnetic ring defining a second hole substantially in the center of the magnetic ring;

a non-magnetic cover defining a third hole substantially in the center of the cover and having a continuous peripheral flange, the cover being mounted to the base washer by the continuous peripheral flange whereby the magnetic ring is held captively between the base washer and the cover by the base washer and the cover and whereby the first, second, and third holes are substantially axially aligned;

a tubular stem with a fourth hole therethrough and substantially in the center thereof, the tubular stem extending through the first and second holes, whereby the

8

first, second, third, and fourth holes are substantially axially aligned; and

attachment means affixed to the base washer by the tubular stem and adapted for attachment to the first surface;

whereby insertion of the male section of the magnetic snap fastener into at least the second and third holes creates a magnetic force which releasably connects the female and male sections and hence the first surface attached to the attachment means and the second surface attached to the male section of the magnetic snap fastener;

wherein the attachment means comprises a pair of legs;

wherein the pair of legs is mounted to the base washer by the tubular stem; and

wherein the pair of legs is rotatable with respect to the base washer.

3. A male section of a magnetic snap fastener for releasably connecting a first surface to which the male section of the magnetic snap fastener is attached and a second surface to which a female section of the magnetic snap fastener is attached, comprising:

a base washer defining a first hole substantially in the center of the base washer;

a tubular stem with a second hole therethrough and substantially in the center thereof, the tubular stem extending through the first hole, whereby the first and second holes are substantially axially aligned; and

attachment means affixed to the base washer by the tubular stem and adapted for attachment to the first surface;

whereby insertion of the tubular stem into the female section of the magnetic snap fastener creates a magnetic force which releasably connects the male and female sections and hence the first surface attached to the attachment means and the second surface attached to the female section of the magnetic snap fastener;

wherein the attachment means comprises a pair of legs;

wherein the pair of legs is mounted to the base washer by the tubular stem; and

wherein the pair of legs is rotatable with respect to the base washer.

*  *  *  *  *

# Exhibit B

Int. Cl.: 26

Prior U.S. Cls.: 37, 39, 40, 42 and 50

United States Patent and Trademark Office

Reg. No. 2,095,367

Registered Sep. 9, 1997

## TRADEMARK
### PRINCIPAL REGISTER

## ROMAG

ROME FASTENER CORPORATION (RHODE ISLAND CORPORATION)
P.O. BOX 3013
MILFORD, CT 064600813

FOR: MAGNETIC SNAP FASTENERS, IN CLASS 26 (U.S. CLS. 37, 39, 40, 42 AND 50).

FIRST USE 11-26-1996; IN COMMERCE 11-26-1996.

SER. NO. 75-216,967, FILED 12-23-1996.

ELIZABETH A. DUNN, EXAMINING ATTORNEY