UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROMAG FASTENERS, INC., | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:10-cv-1827 (CFD) |
| | : | |
| FOSSIL, INC., FOSSIL STORES I, INC., | : | |
| MACY'S, INC., and MACY's RETAIL | : | |
| HOLDINGS, INC., | : | |
|     Defendants. | : | |

## RULING ON MOTION FOR TEMPORARY RESTRAINING ORDER

The plaintiff, Romag Fasteners, Inc. ("Romag"), brought this action against Fossil, Inc., Fossil Stores I, Inc., Macy's, Inc., and Macy's Retail Holdings, Inc. (collectively, "defendants") alleging patent infringement in violation of 35 U.S.C. § 271, trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), and unfair competition and unfair trade practices in violation of state law.[1]  Romag now seeks a temporary restraining order and preliminary injunction.  Specifically, the plaintiff seeks to prevent the defendants from continuing to sell Fossil handbags that contain counterfeit Romag magnetic snap fasteners.  For the reasons that follow, the plaintiff's motion for a temporary restraining order is granted.

---

[1] The Court finds that it has apparent jurisdiction under the Lanham Act, 15 U.S.C. § 1121(a), and 28 U.S.C. § 1331 (federal question jurisdiction).  The Court also finds that venue is proper under 28 U.S.C. § 1391(b)(2), based upon the location of the purchases of Fossil handbags made by Romag's president.

**I.      Factual Background**

Romag is a Connecticut-based manufacturer and seller of magnetic snap fasteners. Romag holds the U.S. patent, No. 5,722,126, for these fasteners, which are most commonly found on women's handbags. Romag also owns the trademark "ROMAG," U.S. Trademark Reg. No. 2,095,367, which appears on Romag's fasteners. Romag sells its magnetic snap fasteners to, among others, high-end manufacturers of women's handbags. From 2002–06, Romag sold Fossil its magnetic snaps. However, beginning in 2006, the number of Romag snaps ordered by Fossil substantially decreased.

On November 15, 2010, Howard Reiter, the President of Romag, discovered several Fossil handbags on sale at a Macy's store in Milford, Connecticut that he believed contained counterfeit snaps bearing the "ROMAG" trademark and the patent marking "USA Pat 5722126." Mr. Reiter purchased four Fossil bags from Macy's containing these allegedly counterfeit magnetic snaps. On November 16, 2010, Mr. Reiter purchased an additional twelve Fossil handbags from a Fossil retail store in Clinton, Connecticut.

After further examining the magnetic snaps used on the Fossil bags he purchased at Macy's and the Fossil retail store, Mr. Reiter confirmed that the snaps were counterfeits. Although each of the counterfeit snaps contain the Romag patent number and trademark, there are several slight differences between Romag's snaps and the counterfeit snaps, including the snaps' dimensions and the use of a period (".") after the words "USA Pat." These differences, while noticeable to Mr. Reiter, are not likely to be discovered by customers purchasing the Fossil handbags.

On November 17, 2010, Romag's attorney sent a cease-and-desist letter to Fossil's

Counsel. Nonetheless, Fossil and Macy's have not agreed to stop selling Fossil handbags that incorporate the counterfeit Romag snaps. Romag now moves to temporarily restrain the defendants from continuing to sell Fossil handbags that contain the counterfeit snaps.

## II.     Discussion

### Temporary Restraining Order Standard

In the Second Circuit, the standard for obtaining a temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b) and obtaining a preliminary injunction are the same. Allied Office Supplies, Inc. v. Lewandowski, 261 F. Supp. 2d 107, 108 n.2 (D. Conn. 2005). The moving party must demonstrate "a threat of irreparable injury and either (1) a probability of success on the merits or (2) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party." Motorola Credit Corp. v. Uzan, 322 F.3d 130, 135 (2d Cir. 2003). The burden on the moving party to obtain a temporary restraining order is even higher where the preliminary relief will "alter, rather than maintain, the status quo." Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996). In such a circumstance, the moving party must make a "clear" or "substantial showing" of the likelihood of success. Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008).

### Threat of Irreparable Injury

The threat of irreparable harm to Romag is great if the defendants are permitted to continue selling the Fossil bags containing counterfeit Romag snaps. Romag has built a significant reputation in the handbag industry for designing and manufacturing snaps for high-end makers of handbags. Given the substantial similarity between Romag snaps and the counterfeit snaps, it is likely that a consumer will not be able to distinguish between the two. As

a result, any defect with the counterfeit snaps will likely be unfairly attributed to Romag and, consequently, hurt Romag's business reputation. Such customer confusion has been held to create a presumption of irreparable injury. See Zino Davidoff SA v. CVS Corp., 571 F.3d 238, 243, 246 (2d Cir. 2009); see also Romag Fasteners, Inc. v. J.C. Penney, Inc., No. 07-cv-1667, 2007 WL 4225792, at *4 (D. Conn. Nov. 28, 2007) (finding that likely customer confusion as to the source of snaps on handbags is sufficient proof of irreparable harm in the absence of preliminary relief). Defendants claim that monetary relief is sufficient to compensate for any injury Romag may suffer but this Court disagrees. Romag has no control over a customer's dissatisfaction with the counterfeit snaps and a company's reputation and goodwill is not easily compensable. See Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc., 754 F.2d 91, 95 (2d Cir. 1985). Finally, given the high volume of shopping during the holiday season, Romag stands to suffer an even more significant injury to its reputation as it is likely that many Fossil handbags, which include the counterfeit snap fasteners, will be purchased in the coming weeks. Accordingly, the Court concludes that the plaintiff has met its burden in proving a threat of irreparable injury.

Probability of Success on the Merits

"The Lanham Act prohibits the use in commerce, without consent, of any 'registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods,' in a way that is likely to cause confusion." Time, Inc. v. Petersen Publ'g Co., 173 F.3d 113, 117 (2d Cir. 1999) (quoting 15 U.S.C. § 1114(1)(a)). In addition, the Act forbids the use in commerce of "any word, term, name symbol, or device, or any combination thereof . . . which is likely to cause confusion, or to cause mistake . . . by another person." 15 U.S.C. § 1125(a). The plaintiff has

the burden to prove that "it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion." Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 390 (2d Cir. 1995) (internal quotations omitted). To succeed on an infringement claim, the possessor of a valid mark "must prove that numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark." Time, Inc., 173 F.3d at 117 (internal quotations omitted).

In the Second Circuit, district courts apply what has become known as "the Polaroid factors" when deciding whether a possessor of a valid mark has established that the use of a similar mark is likely to cause confusion.[2] Time, Inc., 173 F.3d at 117. The Polaroid factors are: (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will bridge the gap; (5) actual confusion; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers. See Time, Inc., 173 F.3d at 117; Arrow, 59 F.3d at 391; Polaroid Corp., 287 F.2d at 495.

No single Polaroid factor is dispositive and the Court should not apply the factors mechanically. See Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 45 (2d Cir. 2000) Rather, the overriding issue is the similarity between the two marks and the likelihood of confusion among prudent consumers. See Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir. 2005); Savin Corp. v. Savin Group, 391 F.3d 439, 458 (2d Cir. 2004); see also Romag Fasteners, 2007 WL 4225792, at *3. "In the circumstances of counterfeit products, . . .

---

[2] "The Polaroid factors" are derived from Judge Friendly's opinion in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961).

the actual-confusion and similarity-of-the-marks tests [are satisfied], since counterfeit items are intended to be highly similar to the authentic product by their nature, and provide no means for the public to distinguish between manufacturers. Romag Fasteners, 2007 WL 4225792, at *3. Here, the counterfeit snaps are nearly identical to Romag's snaps. Notably, the counterfeit snaps contain the "ROMAG" trademark and Romag patent number and share a similar overall design to the actual Romag snaps. In fact, the counterfeit snaps are so similar to the actual Romag snaps that Mr. Reiter could only confirm his suspicion of the counterfeit snaps after purchasing the handbags and removing the magnetic snaps. Finally, Mr. Reiter's declaration confirms that an average consumer would not be able to ascertain the subtle differences between the snaps. The most significant difference between the snaps is a small deviation in size—a difference so small that consumers are likely not to notice. Although the plaintiff has not presented evidence of actual confusion to the court, such a showing is not necessary. See Timex Corp. v. AAI. FosterGrant, Inc., No. Civ.A. 300CV295, 2000 WL 1576396, at *11 (D. Conn. Sept. 14, 2000). Due to the high-level of similarity between the snaps, the Court finds that the plaintiff has proven a sufficient likelihood of consumer confusion. Based on this finding alone, the plaintiff has met its burden of showing the likelihood of success on the merits. See Romag Fasteners, 2007 WL 4225792, at *4.

An analysis of the remaining Polaroid factors supports the Court's finding that consumers are likely to be confused by the counterfeit snaps and, therefore, that Romag is likely to succeed on the merits of its claim. First, as a registered trademark, Romag's mark is very strong. See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F. 2d 867, 871 (2d Cir. 1986). "ROMAG" has appeared on all of Romag's snaps four the fourteen years Romag has been in

business and Romag is a highly recognized manufacturer of snaps for high-end women's handbags. Next, both the proximity of products and bridging the gap tests are also satisfied. Both snaps are used on handbags that serve the same customer base and that are sold in the same marketplace. Thus, the sale of both Romag snaps and counterfeit snaps in a store like Macy's is likely to add to consumer confusion. See Savin, 391 F.3d at 458 (noting that the proximity factor "focuses on whether the two products compete with each other . . . [,] serve the same purpose, fall within the same general class, or are used together . . . ."); Romag Fasteners, 2007 WL 4225792, at *5 (finding both tests satisfied where counterfeit Romag snaps were sold in J.C. Penney stores). As to the issue of good faith, Fossil has previously bought Romag snaps and thus is familiar with the product. Therefore, Fossil should have known that its bags were being manufactured with counterfeit snaps. While there is no explicit evidence of bad faith by Macy's, such a finding is not critical to the plaintiff's claim, especially given the weight of the other evidence against Macy's. Next, despite the photographs submitted to the Court that compare the actual Romag snaps to the counterfeit snaps, the evidence before the Court is insufficient to make a determination at this time as to the quality of the counterfeit snaps.[3] Finally, as to the sophistication of the buyers, the average consumer of Fossil handbags is not likely well-informed as to the particulars of the magnetic snap industry. Purchasers of women's handbags are likely much more focused on the bag itself, rather than on the magnetic snap fastener on the bag. It would take someone like Mr. Reiter, who actually invented the patent, to notice the difference

---

[3] If the quality between the two snaps is similar, "there is a greater likelihood of confusion, but less possibility of dilution [of Romag's brand]." Savin, 391 F.3d at 461. However, where the quality between the snaps is dissimilar, consumers are less likely to be confused but the potential harm to Romag is greater. See id.

between the snaps. Thus, most buyers, whether shopping at Macy's or a Fossil retail store, are not likely to notice the counterfeit snaps and are thus are more likely to be confused about the source of the product. See Bristol-Meyers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1046 (2d Cir. 1992) (stating the inverse relationship between sophistication of buyers and the likelihood of confusion).

In sum, the evidence overwhelmingly suggests that consumer confusion will be caused by the continued sale of Fossil bags with counterfeit snaps. The counterfeit snaps are substantially similar to Romag's snaps and a customer is unlikely to notice the small differences between the two products. Therefore, Romag has met its burden that it is likely to succeed on the merits of its Lanham Act claim and that irreparable harm will result if preliminary relief is not granted. Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d Cir. 1988) ("[A] showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm." (citation omitted)).

Pursuant to Federal Rule of Civil Procedure 65(c), the Court is required to determine the proper amount of a bond necessary "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Id. Based on the circumstances of this case, the Court orders that the plaintiff must post a $50,000 bond for the duration of the temporary restraining order. See Romag Fasteners, 2007 WL 4225792, at *6.

### III.     Conclusion

Accordingly, the plaintiff's motion for a temporary restraining order [Dkt # 10] is GRANTED.  The defendants are temporarily restrained from selling and offering for sale Fossil Handbags bearing counterfeit Romag fasteners.  Romag shall post $50,000 in cash or cash equivalent funds as security pursuant to Fed. R. Civ. P. 65(c).  This order shall expire fourteen (14) days after the day of its entry unless extended for good cause shown.

SO ORDERED this 30th day of November 2010, at Hartford, Connecticut at 12:25 p.m.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**