UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROMAG FASTENERS, INC.,<br>　　　*Plaintiff,*<br><br>　　　　　*v.*<br><br>FOSSIL, INC. *et al.*,<br>　　　*Defendants.* | Civil No. 3:10cv1827 (JBA) |

**JURY INSTRUCTIONS**

# INDEX

I.    INTRODUCTION TO JURY INSTRUCTIONS ........................................................... 2

   A.    Role of the Court ............................................................................................ 4

   B.    Role of the Jury .............................................................................................. 4

   C.    Role of Attorneys ........................................................................................... 5

   D.    Burden of Proof—Preponderance of the Evidence ........................................ 6

   E.    Burden of Proof—Clear and Convincing Evidence ....................................... 7

II.    SUMMARY OF THE CASE ......................................................................................... 8

III.    TRADEMARK AND UNFAIR COMPETITION CLAIMS......................................... 9

   A.    Trademark Infringement ................................................................................ 9

      1.    Likelihood of Confusion ...................................................................... 11

      2.    Definition of Counterfeit ..................................................................... 12

   B.    False Designation of Origin........................................................................... 13

   C.    Willful Trademark Infringement ................................................................... 14

   D.    State Common Law Unfair Competition ...................................................... 14

   E.    Connecticut Unfair Trade Practices Act ....................................................... 14

      1.    Conduct of Trade or Commerce............................................................ 15

      2.    Unfair Trade Practice or Deceptive Act or Practice ............................. 15

      3.    Ascertainable Loss ............................................................................... 17

IV.    PATENT CLAIMS ....................................................................................................... 17

A.   The Role of the Claims of a Patent ......................................................... 17

B.   How a Claim Defines What it Covers and Claim Interpretation ......................... 18

1.   Claim Term and Meaning—"Rotatable" .................................................. 19

C.   Patent Infringement ............................................................................ 19

D.   Willful Patent Infringement ................................................................... 20

V.   REMEDIES AND DAMAGES ........................................................................ 22

A.   Trademark Remedies—Defendants' Profits ............................................... 22

B.   Reasonable Royalty ............................................................................. 24

C.   Punitive Damages ............................................................................... 27

VI.   GUIDELINES FOR DELIBERATION ............................................................... 30

A.   Inference Defined .............................................................................. 30

B.   What Is and What Is Not Evidence .......................................................... 31

1.   What Is Evidence .............................................................................. 31

2.   What Is Not Evidence ......................................................................... 31

C.   Types of Evidence .............................................................................. 32

1.   Answers to Interrogatories ................................................................... 33

D.   Witnesses ....................................................................................... 33

1.   Expert Witnesses .............................................................................. 37

2.   Use of Depositions as Evidence ............................................................. 38

3.   Impeachment by Prior Inconsistent Statement ........................................... 38

VII.   CONCLUSION AND FINAL INSTRUCTIONS ..................................................... 40

# I.     INTRODUCTION TO JURY INSTRUCTIONS

You have now heard all of the evidence in this matter and I will now instruct you on the law to be applied in this case.  After that, you will hear the arguments of counsel and then you will return to the jury room to deliberate in accordance with these instructions.

You must take the law as I give it to you, and if any attorney or any witness or exhibit has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.  The instructions as a whole constitute the law of this case and must be applied as a whole; you should not single out any one instruction or ignore others.

Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than the instructions of the Court.  It would also be a violation of your sworn duty if you were to base any finding of fact on anything other than the evidence presented to you in this case.

Please be patient and listen closely.  Give careful thought to every issue set forth in these instructions regardless of any general feeling you may have about which party is right.  In deciding the facts, you should be guided solely by the evidence presented during trial, without regard to the consequences of your decision.  You have been chosen to try the issues of fact and reach an impartial verdict on the basis of the evidence or lack of evidence.  In this action, Plaintiff and Defendants are entities, not individual persons.  All parties are equal before the law, and are to be dealt with as equals in a court of justice. The parties are entitled to have this case decided without regard to status, size, or supposed wealth.  This case should be considered and decided by you as an action between persons of equal standing and worth.  Your verdict must be based solely upon the evidence about each Defendant.  You will be returning separate verdicts for each

Defendant.  The case against each Defendant, on each count, stands or falls upon the proof or lack of proof against that Defendant alone, and your verdict as to any Defendant on any count should not control your decision as to any other Defendant or any other count

### A.      Role of the Court

As the presiding judge, I perform basically two functions during a trial:  I decide what evidence is admissible for your consideration, and I instruct you on the law that you are to apply to the facts.  I gave you some preliminary instructions before evidence began, but it is now—after the close of evidence—that the full, final instructions are given.

### B.      Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or function as jurors.  In order for you to determine the facts, you must rely upon your own recollection of the evidence.

It is your duty to find the facts from all the evidence in the case.  To the facts as you find them you must apply the law as I give it to you.  And you must perform your duty as jurors regardless of any personal likes or dislikes, opinions, prejudices, or sympathy you may have because they may interfere with your clear thinking and impair

your ability to arrive at a just verdict.  In other words, you must decide the case solely on the evidence that has been put before you.

Because you are the sole and exclusive judges of the facts, nothing in the instructions and nothing I have said during the trial reflects any opinion from me as to what your verdict should be.  That is a matter entirely up to you.  The rulings I have made during the trial are on legal matters, which are exclusively for the court, not the jury, because they do not constitute evidence.

### C.    Role of Attorneys

Our courts operate under an adversarial system, in which it is the role of the attorneys to press as hard as they can for their respective positions.  In fulfilling that role, they have not only the right, but the obligation, to make objections to the introduction of evidence they feel is improper.  The application of the rules of evidence is not always clear, and lawyers often disagree.  It is my job as the judge to resolve these disputes, but my rulings on evidentiary matters have nothing to do with the ultimate merits of the case, and are not to be considered as points scored for one side or the other.

During a trial, one cannot help observing the personalities and styles of the attorneys, but it is important for you as jurors to recognize that this is not a contest among attorneys.  You are to decide this case solely on the basis of the evidence, but the statements and characterizations of the evidence by the attorneys are not evidence.  Insofar as you find their closing arguments helpful, take advantage of them, but it is your memory and your evaluation of the evidence in the case that controls.

### D.        Burden of Proof—Preponderance of the Evidence

Plaintiff Romag bears the burden of proving each element of its claims by a preponderance of the evidence.  The burden of proof in this civil case is different from the burden of proof in criminal cases.  In criminal cases, the burden of proof is higher—proof beyond a reasonable doubt.  That is not the standard here.  The standard here is proof by a preponderance of the evidence, which means proof that something is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and the persuasiveness of the evidence admitted, not to the number of witnesses or documents.  If one party proves a claim by a preponderance of the evidence, that means the evidence it has presented has more convincing force than the opposing evidence and produces in your minds a belief that what is sought to be proved is more likely true than not true.

It might be helpful to imagine a pair of scales in equal balance.  Imagine that, in assessing Plaintiff's claims, you can put its evidence on one side of the scale and Defendants' evidence on the other side of the scale.  If the scales tip ever so slightly in favor of Romag, then its evidence preponderates and it has sustained its burden of proof.  If the scales tip the other way, ever so slightly in favor of Defendants, then, obviously, Plaintiff has not sustained its burden of proof.  Should you find the scales are evenly balanced, that neither side's evidence outweighs the other's such that it is equally probable that either side is right, then Romag has failed to meet its burden of proving its claim by a preponderance of the evidence, and your verdict will be for Defendant on that claim.

In determining whether a claim has been proved by a preponderance of the evidence, you consider the relevant testimony of all witnesses, regardless of who may have called them, and all the exhibits in evidence, regardless of who may have offered them.

**E.      Burden of Proof—Clear and Convincing Evidence**

In this case, Romag contends that Fossil and Macy's infringed the '126 patent, and that their infringement was willful.  Shortly, I will detail Romag's basis for contending that Fossil and Macy's willfully infringed.

To prove that infringement of a patent is willful, Romag must persuade you by clear and convincing evidence, i.e., that it is highly probably that the infringement was willful.  Such evidence requires a higher standard of proof than proof by a preponderance of the evidence.  To find willful patent infringement proved by Romag, you must be left with a clear conviction that the patent infringement was willful.

## II.    SUMMARY OF THE CASE

Plaintiff Romag Fasteners, Inc. (or "Romag") brings this action against Defendants Fossil, Inc.; Fossil Stores I, Inc.; Macy's, Inc.; Macy's Retail Holdings, Inc.; Dillard's, Inc.; Nordstrom, Inc.; The Bon-Ton Stores, Inc.; The Bon-Ton Department Stores, Inc.; Belk, Inc.; Zappos.com, Inc.; and Zappos Retail, Inc., alleging that Defendants committed trademark infringement, false designation of origin, unfair competition, and engaged in unfair or deceptive business practices in violation of federal and state law. Plaintiff also alleges that Defendants Fossil, Inc. and Fossil Stores I, Inc. (or "Fossil") and Macy's, Inc. and Macy's Retail Holdings, Inc. (or "Macy's") committed patent infringement in violation of federal law.  Romag claims that Defendants have sold Fossil handbags containing magnetic fasteners that bear the mark ROMAG and the designation U.S. Pat. No. 5,722,126 without Romag's consent or authorization.   Romag seeks monetary compensation for Defendants' alleged conduct.  Defendants deny that they infringed on Plaintiff's trademark or patent rights and that they committed unfair competition or unfair or deceptive business practices, and claim that they used only genuine ROMAG snaps in the handbags they sold.

*       *       *

I will now describe the elements of Plaintiff's legal claims.

8

III.     TRADEMARK AND UNFAIR COMPETITION CLAIMS

Plaintiff brings several claims against Defendants related to their use of magnetic snap fasteners bearing the ROMAG trademark in handbags imported to and/or sold in the United States.  Plaintiff contends that Defendants committed trademark infringement and false designation of origin in violation of federal law, unfair competition in violation of Connecticut state common law, and unfair or deceptive business practices in violation of the Connecticut Unfair Trade Practices Act ("CUTPA").  Plaintiff also contends that Defendants' alleged infringement was willful.  Finally, Plaintiff contends that it is entitled to an award of Defendants' profits and punitive damages.  Defendants deny that Plaintiff has met its burden of proof on any of these claims, and argue that Plaintiff is not entitled to any monetary recovery for these claims.

\*          \*          \*

A.     Trademark Infringement

Plaintiff brings a claim for trademark infringement against Defendants under Section 32(l) of the Lanham Act, which is the federal trademark statute, which prohibits the use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."   The law entitles the owner of a trademark to permit or exclude others from using that trademark.  The owner of a trademark may enforce the right to exclude others in an action for trademark infringement.

9

The term "trademark" includes any word, name, symbol or device or any combination thereof, adopted and used by a manufacturer or merchant to identify and distinguish its goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods.  The main function of a trademark is to identify and distinguish goods as a product of a particular manufacturer or merchant and to protect its goodwill against the sale of another's product as its own.  A trademark is also a merchandising symbol that helps a prospective purchaser to select the goods the purchaser wants.  A trademark signifies that all the goods bearing the mark derive from a single source and are equivalent in quality.  There is therefore a public interest in the use of trademarks.

In order to prove its claim for trademark infringement, Plaintiff must prove the following elements by a preponderance of the evidence:

(1)  Plaintiff is the owner of the ROMAG mark;

(2) The ROMAG mark is a valid mark entitled to protection; and

(3)  Defendants without Romag's consent, used a mark that is likely to cause confusion.

The parties have stipulated that Plaintiff is the owner of the ROMAG mark and that the ROMAG mark is a valid mark entitled to protection.  Defendants need not have been involved in the manufacture nor the affixing of the ROMAG trademark to the magnetic snap fasteners to be liable for trademark infringement.  Their sale of the handbags containing the magnetic snap fasteners would be sufficient "use" for Defendants to be

liable for the results of such infringement, and their claimed lack of knowledge of their supplier's infringement, even if true, provides no defense.

### 1.   Likelihood of Confusion

The final element that Plaintiff must prove in order to succeed on its trademark infringement claim is that Defendants, without Romag's consent, used the ROMAG mark in a manner likely to cause confusion regarding the source of these goods.

You must determine only whether there is a likelihood of confusion; so it is unnecessary that the evidence show that any specific person has been confused or misled. It is sufficient if you find that the consequences of Defendants' use of the ROMAG mark in all reasonable probability would be to cause confusion regarding the source, sponsorship, approval or affiliation of the products.

The fact that the products could be distinguished by careful or discriminating purchasers is not enough to lead you to conclude that here is no likelihood of confusion.

In determining whether Defendants used the ROMAG mark in a manner likely to cause confusion regarding the source of Plaintiff's and Defendants' goods, you may draw on your common experience as citizens of the community.  Likelihood of confusion is also determined by evaluating the following factors:

(1) The strength of the ROMAG mark;

(2) The degree of similarity between Plaintiff's use of the mark ROMAG and Defendants' use of the mark ROMAG;

(3) The similarity between Plaintiff's products, i.e., magnetic snap fasteners, and the magnetic snap fasteners used in Defendants' handbags;

(4) Any actual confusion about the source of the parties' products caused by

    Defendants' use of the ROMAG mark;

(5) Whether Defendants acted in bad faith by adopting the ROMAG mark;

(6) Whether Defendants' products are inferior to Romag's products; and

(7) The sophistication of the relevant purchasing public of the parties' products.

No one factor or consideration is conclusive, but each should be weighed in light of the total evidence presented at trial.   In light of these considerations and your common experience, you must determine if the relevant public, neither overly careless nor overly careful, would be, upon encountering Defendants' products, confused about the source, sponsorship, approval, or affiliation of the parties' products.

2.    *Definition of Counterfeit*

Section 1116(d)(1)(B) of the Lanham Act defines a "counterfeit" as:

(i) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for . . . goods . . . sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or

(ii) a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available . . . ;

but such term does not include any mark or designation used on or in connection with goods . . . of which the manufacture[r] or producer was, at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods . . . so manufactured or produced, by the holder of the right to use such mark or designation.

Put more simply, a "counterfeit mark" is a false mark that is identical with, or substantially indistinguishable from, the genuine mark, which is used without the consent or authorization of the genuine mark's owner.   Plaintiff has the burden of proving that

12

the accused snaps were counterfeit within the meaning of the statute.  Therefore, Plaintiff must prove by a preponderance of the evidence that (1) the mark used on the snap fasteners on the Fossil bags is a copy that is identical or substantially indistinguishable from the ROMAG trademark that is registered on the Principal Register of the United States Patent and Trademark office; (2) that the mark was affixed without Romag's permission; and (3) Defendants used Plaintiff's trademark in the sale, offering for sale, distribution, or advertising of goods that are covered by Plaintiff's trademark registration.

If you find that Romag has proven that Defendants used a counterfeit mark as I have just defined that term for you, then you may presume that there is a likelihood of confusion between Plaintiff's mark and the counterfeit mark used by Defendants. Defendants may rebut this presumption by proving by a preponderance of the evidence that there was no likelihood of confusion.

### B.       False Designation of Origin

Plaintiff also brings a claim for unfair competition, namely false designation of origin, against Defendants pursuant to Section 43(a) of the Lanham Act, which "guards against infringement of unregistered marks and other indicia of origin, including trade dress and trade names." To establish a claim for false designation of origin, Plaintiff must prove that it owns the ROMAG mark and that the ROMAG mark is valid and protectable. The parties have stipulated to these facts.  Plaintiff must prove that the ROMAG mark is associated with magnetic snap fasteners and that the use of the same mark by Defendants constitutes a false representation that Defendants' goods come from the same source, or are affiliated with or sponsored by Romag.  Romag must also prove a likelihood of

confusion as to the source, sponsorship, approval, or affiliation of the goods.  You should apply the same instructions regarding likelihood of confusion and counterfeiting to this claim as you do to Plaintiff's trademark infringement claim.

### C.    Willful Trademark Infringement

Plaintiff also alleges that Defendants willfully infringed its trademark.  If you find that Defendants infringed Romag's trademark, you must also determine if Defendants used the trademark willfully, as I will now define that term for you.  This is a separate claim from Plaintiff's claim that Defendants infringed Romag's trademark, which I described earlier.  To prove willfulness, Plaintiff must show (1) that Defendants were actually aware of the infringing activity, or (2) that Defendants' actions were the result of willful blindness.  Willful blindness means that Defendants knew they might be selling infringing goods but nevertheless intentionally shielded themselves from discovering the truth.

### D.    State Common Law Unfair Competition

Plaintiff also brings a claim against Defendants for unfair competition under Connecticut common law.  This claim mirrors the federal claim for unfair competition, in this case false designation of origin.  The test for common law unfair competition under Connecticut law is identical to the test under the Lanham Act, and thus you should apply the same instructions as a set forth for Plaintiff's false designation of origin claim to Plaintiff's state common law unfair competition claim.

### E.    Connecticut Unfair Trade Practices Act

Plaintiff claims that Defendants violated the Connecticut Unfair Trade Practices Act, a Connecticut law, commonly known as CUTPA.  In order to succeed on its CUTPA claim, Plaintiff must prove by a preponderance of the evidence that:  (1) Defendant

engaged in an unfair method of competition or an unfair or deceptive act or practice in the conduct of trade or commerce; and (2) Plaintiff suffered an ascertainable loss as a result of Defendants' conduct.

### 1. *Conduct of Trade or Commerce*

As the first step in deciding whether Defendants violated CUTPA, you must first determine whether Defendants' actions were carried out in the course of their trade or commerce. In this case, it is not disputed that Defendants' actions were carried out in the course of their trade or commerce.

### 2. *Unfair Trade Practice or Deceptive Act or Practice*

Plaintiff may satisfy the first element of its CUTPA claim by proving that Defendants engaged in either an unfair trade practice or a deceptive act or practice. Romag need not prove both theories in order to satisfy the first element. If you find that Romag has proven that, in the course of its business, any Defendant engaged in either an unfair trade practice or in a deceptive act or practice, then the first element is met.

### (a) Unfair Trade Practice

To prove that Defendants' conduct constituted an unfair trade practice, Romag must prove that Defendants' conduct meets at least one of the three following criteria: (1) it offends public policy as it has been established by statutes, the common law, or other established concept of unfairness; or (2) it is immoral, unethical, oppressive, or unscrupulous; or (3) it causes substantial injury to consumers, competitors, or other business persons. Romag is not required to prove that Defendants' conduct satisfies all three of these criteria. A practice can be unfair because it meets one of these criteria to a large degree or because it meets all of these criteria to a lesser degree. Conduct may violate CUTPA even if it is not expressly illegal.

Plaintiff asserts that Defendants' actions in trading in allegedly counterfeit fasteners bearing the ROMAG trademark and Romag's patent number constituted an unfair trade practice because it offended public policy. The public policy of the State of Connecticut protects the intellectual property of a corporation such as Romag. Violation of a statute does not automatically result in a CUTPA violation. Therefore, even if you find that Defendants violated a statute, you must still decide whether Plaintiff has proved that Defendants' statutory violation offends public policy.

Plaintiff also asserts that Defendants' actions in trading in allegedly counterfeit fasteners bearing the ROMAG trademark and Romag's patent number constituted an unfair trade practice because such conduct was immoral, unethical, oppressive, or unscrupulous. Conduct is immoral or unethical if such conduct violates or breaches the standard of right and wrong that is generally expected of persons doing business in Connecticut. Conduct is oppressive if it unnecessarily or recklessly imposes substantial hardship and loss on others. Conduct is unscrupulous when the party who engages in such conduct acts with complete disregard or indifference to the rights and interests of persons who are certain to be affected by that conduct. You need to determine whether Defendants' conduct was immoral, unethical, oppressive, or unscrupulous.

Plaintiff also asserts that Defendants' actions in trading in allegedly counterfeit fasteners bearing the ROMAG trademark and Romag's patent number constituted an unfair trade practice because there was substantial injury to consumers, competitors, or other business persons. Plaintiff must prove by a preponderance of the evidence that Defendants' conduct caused an injury that is: (1) substantial; (2) not outweighed by countervailing benefits to consumers or competition; and (3) that consumers or competitors could not reasonably have avoided.

16

(b)      Deceptive Act or Practice

To prove that Defendants' conduct constituted a deceptive act or practice, Plaintiff must prove three requirements.  First, there must be a representation, omission, or other practice likely to mislead customers.  Plaintiff does not have to prove that Defendants intended to deceive those customers or that Defendants knew the statement or act was false.  Second, the consumers must interpret the message reasonably under the circumstances.  Third, the misleading representation, omission, or practice must be material—that is, likely to affect consumer decisions or conduct.

3.      *Ascertainable Loss*

In addition to proving that Defendants committed an unfair trade practice or an unfair or deceptive act that violates CUTPA, Plaintiff must prove it sustained an ascertainable loss.  Plaintiff has the burden of proving ascertainable loss.  A loss is a deprivation, detriment, or injury.  A loss is ascertainable if it is capable of being discovered, observed, or established, but it need not be measured by a dollar amount.

## IV.    PATENT CLAIMS

Romag alleges that Fossil and Macy's infringed Claims 1, 2, and, 3 of the '126 patent, and seeks monetary damages in the amount of a reasonable royalty as compensation for this alleged violation.  Romag further alleges that Defendants' patent infringement was willful.  Defendants deny that they have infringed Plaintiff's patent, or that such infringement was willful.

### A.    The Role of the Claims of a Patent

Before you can decide the patent issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define

what a patent covers.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim.  The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case.  You must accept my definition of the disputed word in the claims as being correct.  It is you job to take this definition and apply it to the issues that you are deciding.

### B.    How a Claim Defines What it Covers and Claim Interpretation

I will now explain how a claim defines what it covers.  A claim sets forth, in words, a set of requirements.  Each claim sets forth its requirements in a single sentence.  If a device satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent.  Each claim may be narrower or broader than another claim by setting forth more or fewer requirements.  The coverage of a patent is assessed claim-by-claim.  In patent law, the requirements of a claim are often referred to as "claim elements" or "claim requirements."  When a thing (such as a product or process) meets all the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.  In other words, a claim covers a product or process where each of the claim elements or requirements is present in that product or process.

18

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose.  As I just instructed you, there is a specific term that I have defined and you are to apply the definition that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim.  Once you understand what each claim covers, then you are prepared to decide infringement.

I will now explain to you the meaning of one of the words in the claims in this case.  In doing so, I will explain some of the requirements of the claims.  For any words in the claim for which I have not provided you with a definition, you should apply their common meaning.  You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide infringement.  That issue is yours to decide.

### 1.    Claim Term and Meaning—"Rotatable"

The three claims of the '126 patent comprise attachment legs that are mounted to a base washer and are "rotatable" with respect to this base washer.  The term "rotatable" means "capable of being rotated and not rigidly secured, i.e., the connection between the legs and the base washer allows for a change of position about the rotational axis."

### C.    Patent Infringement

In order to prove that Fossil and Macy's directly infringed the '126 patent, Romag must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Fossil and Macy's made, used, sold, imported, or offered for sale within the United States

a product that meets all of the requirements of a claim and did so without the permission of Romag.  Someone can infringe a patent without knowing of the patent or without knowing that what they are doing is an infringement of the patent.  They also may infringe a patent even though they believe in good faith that what they are doing is not an infringement of any patent.  You must compare the accused product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.  The same element of the accused product may satisfy more than one element of a claim.  The proper comparison for infringement is between Romag's '126 patent claims and the snaps used in Fossil's handbags, not a comparison between Romag's snaps and the snaps used in Fossil's handbags.  You must determine, separately for each asserted claim, whether or not there is infringement.  You may also take into account that placing a patent number on a product is an admission that the marked product falls within the scope of the patented claims.

### D.    Willful Patent Infringement

Plaintiff also contends that Fossil and Macy's committed the act of patent infringement willfully. This is a separate claim from Plaintiff's claim that Fossil and Macy's infringed Romag's patent.   Your determination of whether their patent infringement was willful will not be related to your assessment of damages, if any.  The purpose of your determination is to aid the Court in making further decisions in this case after your verdict is returned.

You must determine whether Plaintiff has proved willful infringement by clear and convincing evidence.  Remember that this is a higher degree of persuasion than is necessary to meet the preponderance of the evidence standard.  Willfulness requires you to determine that Plaintiff has proved that Fossil and Macy's acted with willful blindness.

To prove that Fossil and Macy's acted with willful blindness, Romag must prove: (1) that it is highly probable that Fossil and Macy's acted despite an objectively high likelihood that their actions infringed a valid and enforceable patent and (2) that it is highly probable that Fossil and Macy's knew or should have known of this infringement risk.

In making the first determination, you may not consider Fossil and Macy's state of mind. Legitimate and credible defenses to infringement, even if not ultimately successful, demonstrate a lack of willful blindness. Only if you conclude that Fossil and Macy's were wilfully blind do you need to consider the second part of the test. The second part of the test does depend on the state of mind of Fossil and Macy's. Romag must persuade you that Fossil and Macy's knew or should have known that their actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent. To determine whether Fossil and Macy's had this state of mind, consider all facts, which may include, but are not limited to:

(1) Whether or not Fossil and Macy's acted in accordance with the standards of conduct for their industries;

(2) Whether or not Fossil and Macy's intentionally copied a product of Romag's that is covered by the '126 patent;

(3) Whether or not there is a reasonable basis to believe that Fossil and Macy's did not infringe or had a reasonable defense to infringement;

(4) Whether or not Fossil and Macy's made a good-faith effort to avoid infringing the '126 patent;

(5) Whether or not Fossil or Macy's tried to cover up their infringement;

(6) Whether or not Fossil or Macy's had an economic incentive to infringe on the '126 patent.

## V.      REMEDIES AND DAMAGES

I will now instruct you on the issue of remedies and damages.  The fact that I am instructing you concerning remedies and damages should not be considered as indicating any view by the Court as to whether Defendants are liable on any claim.  The instructions on damages are for your guidance if you find in favor of Plaintiff.  If you find that Romag has proved that Defendants are liable, then you must decide how much, if any, in remedies and damages to award for injuries caused by the unlawful conduct you found proved.  You should award damages only for those injuries that you find Plaintiff has proved by a preponderance of the evidence to have been a proximate result of Defendants' conduct.  You should apply sound judgment and common sense in reaching the proper amount of damages or profits.  Any remedies or damages must be based upon the evidence presented and not on any sympathy you may feel for any of the parties.  You must decide what remedies, if any, are appropriate under each of Plaintiff's claims.

### A.      Trademark Remedies—Defendants' Profits

If you decide for Romag on the question of liability for trademark infringement or false designation of origin, then you should consider the amount of money to award to Romag, if any.  If you decide in favor of one Defendant on the question of trademark liability, then you should not consider the remedies and damages issue with respect to that Defendant.  In this case, Romag does not seek actual damages, but rather seeks an award of the profits that each Defendant made because of its infringement.  If you find that Defendants have violated Romag's trademark rights, Romag may be entitled to recover Defendants' profits.

Profits may only be awarded if you find a Defendant has been unjustly enriched by use of Plaintiff's trademark or there is a need to deter an infringer from doing so again.

It is not necessary for you to make a finding of both unjust enrichment and deterrence in order for you to make an award of profits. You may award Romag Defendants' profits if you make either a finding of unjust enrichment or deterrence, or both.

In order to be entitled to an award of profits under the unjust enrichment rationale, Romag must show actual confusion or proof of Defendants' deceptive intent. The use of a counterfeit may be proof of deceptive intent.

In order to be entitled to an award of profits under the deterrence rationale, Romag must show that Defendants demonstrated a callous disregard of the known rights of Romag as a mark holder. In considering whether Defendants engaged in such callous disregard of Romag's rights, you should consider all the circumstances presented in this case, including whether Defendants turned a blind eye to the use of counterfeit snap fasteners.

Profit is determined by deducting all expenses from gross revenue. Gross revenue is all of Defendants' receipts from using the infringing mark in the sale of its product. Plaintiff has the burden of proving a Defendant's gross receipts by a preponderance of the evidence.

Expenses are all costs incurred in producing the gross revenue. Defendant has the burden of proving the expenses. Defendant also bears the burden of proving that any portion of the profit is attributable to factors other than the infringement. Defendant must prove each of these by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of the products using the trademark is attributable to factors other than use of the trademark, you should find that the total profit is attributable to the infringement. If you determine that Plaintiff is

entitled to an award of profits under the deterrence rationale, you may decide to award Defendants' profits even if the profits were not acquired due to the use of Romag's mark.

On the verdict form, you will be asked to calculate profits separately for each Defendant that you find infringed Plaintiff's trademark.

### B.    Reasonable Royalty

If you find that Fossil or Macy's infringed any claim of the '126 patent, then you must consider what amount of damages to award Romag.  The damages you award must be adequate to compensate Romag for the patent infringement.  They are not meant to punish an infringer.  Your damages award, if you reach this issue, should put Romag in approximately the same financial position that it would have been in had the infringement not occurred.  If you find that Romag is entitled to damages on its patent claims, you may not include or add any sum for purposes of punishing Fossil or Macy's. Romag has the burden to establish the amount of its patent damages by a preponderance of the evidence.  In this case Romag seeks a reasonable royalty.  A reasonable royalty is defined as the amount of money Fossil and Macy's and Romag would have agreed upon as a fee for the use of the invention at the time prior to when the infringement began.

If you find that Romag has established patent infringement, Romag is entitled to at least a reasonable royalty to compensate for each infringing sale.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at the time, and

had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and that the patent holder and the infringer were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1) The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty;

(2) The rates paid by the licensee for the use of other patents comparable to the patent-in-suit;

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by

granting licenses under special conditions designed to preserve that monopoly;

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or conveyed sales;

(7) The duration of the patent and the term of the license;

(8) The established profitability of the product made under the patent, its commercial success, and its current popularity;

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions;

(13) The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

(14) The opinion and testimony of qualified experts; and

(15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors that in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework that you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

## C.    Punitive Damages

If you find Defendants' liable on either Plaintiff's state common law unfair competition claim or Plaintiff's CUTPA claim, you will also be asked whether Plaintiff has proved that punitive damages should be awarded against Defendants under the

standards I will describe.  Plaintiff does not seek an award of compensatory damages with respect to these claims.  Punitive damages are not available for Plaintiff's federal trademark and patent claims and thus you may not award punitive damages to Plaintiff on those claims.  Punitive damages are awarded to punish a defendant for extreme or outrageous conduct that harmed a plaintiff, and to deter or prevent a defendant and others like it from committing such conduct in the future.

You may find that Plaintiff is entitled to punitive damages if you find that the acts or omissions of Defendants were done recklessly, willfully, or wantonly.  Willful, reckless, or wanton conduct means conduct that is highly unreasonable and involves an extreme departure from ordinary care in a situation where a high degree of danger is apparent. Plaintiff has the burden of proving, by the greater weight of the evidence, that Defendants acted recklessly, willfully, or wantonly.   Proof of negligent or grossly negligent conduct is insufficient.

If you find by a preponderance of the evidence that Defendants acted recklessly or wantonly, then you may find punitive damages should be awarded.  An award of punitive damages, however, is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide whether to award punitive damages or not to award them.

In exercising your discretion, you should consider the underlying purpose of punitive damages:  to punish a defendant for outrageous conduct or to deter it and other similar companies from performing similar conduct in the future.  You should also consider whether the damages award is likely to deter or prevent Defendants from again performing any such wrongful acts, or whether punitive damages are necessary to provide deterrence.  Finally, you should consider whether punitive damages are likely to deter or

prevent other handbag designers and retailers from performing wrongful acts similar to those that Defendants were proved to have committed.

If you decide that punitive damages are warranted, you will indicate that determination on the verdict form, but will not be asked to make an award of damages because under Connecticut law, the Court will determine the amount of punitive damages if you find that they are warranted.

## VI.     GUIDELINES FOR DELIBERATION

### A.     Inference Defined

The term "inference," is used in these instructions and may be used by counsel in their closing arguments.   You will be asked to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess.   It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact which you know exists.

There are times when different inferences may be drawn from the same facts. Plaintiff will ask you to draw one set of inferences, while Defendant will ask you to draw another.   It is for you, and you alone, to decide what inferences, if any, you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation.   An inference is a deduction or conclusion which you, the jury, are permitted to draw—but are not required to draw—from the facts which have been established by either direct or circumstantial evidence.   In drawing inferences, you should exercise your common sense, and you may draw such reasonable inferences from the facts as you find to be justified in light of your experience.   Whatever inferences you may draw, however, must, taken together with all of the evidence of the case, meet the standard of the preponderance of the evidence as to each element of Plaintiff's claim.

**B.**   **What Is and What Is Not Evidence**

    *1.*   *What Is Evidence*

The evidence you will use to decide what the facts are comes in two forms:

    (1)   sworn testimony of witnesses, on both direct and cross-examination; and

    (2)   exhibits that have been received in evidence.


    *2.*   *What Is Not Evidence*

The evidence on which you will base your findings does not include:

    (1)   closing arguments or presentations, or other statements by lawyers—they are not witnesses and have no first-hand knowledge;

    (2)   questions asked of the witnesses are not evidence;

    (3)   facts incorporated into a question are not evidence unless the witness agrees to the accuracy of the facts;

    (4)   anything you may have seen or heard outside the courtroom is not evidence; and

    (5)   objections to questions or to offered exhibits are not evidence.

Remember, attorneys have a duty to their clients to object when they believe evidence is being offered improperly and should not be admitted.  You should not be influenced by the objection or by the Court's ruling on the objection. If the objection was

sustained, ignore the question and, if an answer was given, ignore the answer.  If the objection was overruled, treat the answer as evidence as you would any other answer.

### C.    Types of Evidence

There are two types of evidence which you may properly use in deciding whether Plaintiff has proved its claims by a preponderance of the evidence.

One type of evidence is called direct evidence.  Direct evidence is a witness' testimony about what he or she saw, heard, or observed.  In other words, when a witness testifies about what is known to him or her based on his or her own knowledge obtained through his or her own senses—what he or she sees, feels, touches, or hears—that is called direct evidence.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts.  You infer on the basis of reason and experience and common sense from an established fact whether or not some other fact has been proven.

Circumstantial evidence is of no less value than direct evidence.  The law makes no distinction between direct and circumstantial evidence, and as I have explained before, you must be satisfied with Defendant's liability by a preponderance of the evidence from all of the evidence in the case.

Speculation, guesswork, or intuition cannot be substituted for proof.  You must be satisfied by a preponderance of the evidence, whether it be direct or circumstantial, that Defendant is liable for Plaintiff's injury, that is, every element comprising Plaintiff's claims, as I described them to you.  You must also be satisfied by a preponderance of the

evidence that Defendants have proved any element of their defenses or claims on which I have instructed you that Defendants bear the burden of proof.

I have also permitted prior deposition testimony of a witness to be presented even though the person is present to testify.  Said deposition testimony is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as testimony from the witness stand.

1.      *Answers to Interrogatories*

Each party has introduced into evidence certain interrogatories with answers signed and sworn to by the other party.  A party is bound by its sworn answers, but the introducing party does not bind itself to its opponent's answers.  The introducing party may challenge the opposing party's answers in whole or in part or may offer contrary evidence.

**D.      Witnesses**

You have had an opportunity to observe all of the witnesses.  It is now your job to decide how believable each witness was in his or her testimony because you are the sole judges of the credibility of each witness and of the weight to be given to his or her testimony.

It must be clear to you by now that you are being called upon to resolve various factual issues in the face of the very different pictures painted by Plaintiff and Defendant. In deciding whether Plaintiff or Defendants have met their respective burdens of proof, you will be making judgments about the testimony of the witnesses you have listened to and observed.  In making those judgments, you should carefully scrutinize all of the

testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you to decide the truth and the importance of each witness' testimony.

Here are some factors you may take into account in making your credibility determinations:

- Did the witness seem to be honest, candid, and forthright?

- Did the witness have any reason not to tell the truth or seem as if he or she was hiding something or being evasive?

- Did the witness have an interest in the outcome of the case?

- Did the witness have a good memory?

- Did the witness have the opportunity and ability to observe accurately the things he or she testified about?

- If the witness appeared to be trying to be honest, was he or she nonetheless mistaken?

- Was the witness' testimony supported by other evidence, or did it differ from the testimony of other witnesses or other evidence?

- Was the witness trying to give you information accurately or was he or she trying to persuade you of something?

- Was the witness' testimony and attitude on cross-examination consistent with his or her testimony and attitude on direct examination?

- Did the witness have a relationship with Plaintiff or with Defendants that may have affected how he or she testified?

- Did the witness have some incentive, loyalty, or motive that might cause him or her to shade the truth; or, did the witness have some bias, prejudice, or hostility that may have caused the witness—consciously or not—to give you something other than a completely accurate account of the facts he or she testified to?

In connection with your evaluation of the credibility of the witnesses, you should consider evidence of a witness' resentment or anger towards Plaintiff or Defendant or of loyalty towards either Plaintiff or Defendant. Evidence that a witness is biased, prejudiced, or hostile towards one side or the other requires you to view that witness testimony with caution and weigh it with great care.

Your decision whether or not to believe a witness may depend on how that witness impressed you, applying these factors and your common sense. How much you choose to believe a witness may be influenced by the witness' bias. Also bear in mind that people sometimes forget things. A contradiction within a witness' testimony or between witnesses may be the result of an innocent lapse of memory, or it may be an intentional falsehood. Similarly, different people observing an event may testify about it differently; they may do so because they remember it differently, or because one of them is not being truthful. Inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause you to discredit such testimony. If you find that a witness has knowingly testified falsely concerning any matter, you have a

right to distrust the testimony of such an individual concerning other matters.  You may reject all the testimony of that witness or give it such weight or credibility as you may think it deserves.

You are not required to accept testimony even though the testimony is uncontradicted and the witness is not impeached.  You may decide, because of the witness' bearing and demeanor or because of the inherent improbability of his or her testimony or for other reasons sufficient to you, that such testimony is not worthy of belief.

The testimony of a single witness may be sufficient to convince you of Defendants' liability by a preponderance of the evidence, if you believe that the witness has truthfully and accurately related what in fact occurred.  Conversely, the testimony of a single witness can defeat Plaintiff's burden of proof as to the existence of an element of its claims.

You must decide what is the most accurate, credible, trustworthy, and reliable evidence.  The weight of the evidence as to a particular fact is not determined by the number of witnesses or exhibits.  It is the quality of the evidence that supports a finding as to a particular fact that should control.

In sum, what you must try to do in deciding credibility is to size a person up in light of his or her demeanor, the information and explanations given, and all the other evidence in the case, just as you would in any important matter where you are trying to decide if a person is truthful, straightforward, and accurate in his or her testimony.  In

deciding questions of credibility, remember that you should use your common sense, your good judgment, and your experience.

> ### 1.    *Expert Witnesses*

In this case you have heard from several expert witnesses:  Dr. E. Deborah Jay, Dr. James Rice, Ms. Laura Stamm, Dr. Udo Schwarz, Ms. Lisa Steinberg, Mr. Terry Van Winkle, Dr. J. Scott Armstrong, and Dr. Phillip Beutel.  An expert witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.  In weighing this opinion testimony, you may consider the witness' qualification, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.

You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion.  Nor should you substitute it for you own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.

2.      *Use of Depositions as Evidence*

During the trial, certain testimony has been presented by way of deposition because the witness could not be required to testify live at this trial.  The testimony of a witness whose testimony under oath at a deposition is presented at trial in writing or by video is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

3.      *Impeachment by Prior Inconsistent Statement*

You have heard evidence that witnesses made statements on earlier occasions that counsel may argue are inconsistent with that witness' trial testimony.  Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence bearing on Defendants' liability.  Evidence of the prior inconsistent statement was placed before you for the limited purpose of helping you decide whether to believe the trial testimony of that witness.  If you find that the witness made an earlier statement that conflicts with his or her trial testimony, you may consider that fact in determining how much of his or her trial testimony, if any, to believe.

In making this determination you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how

much, if any weight to be given to the inconsistent statement in determining whether to believe all or part of the witness' testimony.

## VII.    CONCLUSION AND FINAL INSTRUCTIONS

I have now concluded the instructions relating to the specific claims in this case. In closing, I must add a few more general instructions concerning your deliberations. You were permitted to take notes during the course of the trial.  Any notes you have taken should be used only as memory aids; do not give your notes precedence over your independent recollection of the evidence.  If you did not take notes, you should rely on your own recollection of the proceedings and should not be influenced by the notes of other jurors.  Your notes are not evidence and should not be shared.

Your verdict must be unanimous and represent the considered judgment of each juror.  Each of you must make your own decision, but you must consider impartially all the evidence or lack of evidence and the views of your fellow jurors.  It is your duty to consult with one another and to deliberate with a view toward reaching an agreement if you can do so consistent with the individual judgment of each juror.  Until a verdict is agreed to by each juror, it is not a unanimous verdict.

In the course of your deliberations, do not hesitate to re-examine your individual view, or to change your opinion, if the deliberations and the views of your fellow jurors convince you that your view is erroneous.  However, you should not surrender your conscientious opinion on how the issues should be decided, which must be reflected in your final vote.  Remember at all times that you are not partisan, rather you are the judges of the facts and your sole interest is to determine if Plaintiff has met its burden of proof.

Upon retiring to the jury room you should first elect one among you to act as your foreperson who will preside over your deliberations and will be your spokesperson here in court.  After you have retired to begin your deliberations, you are not to leave your jury room without first notifying the marshal, who will escort you.  No deliberation may take place without all jurors being present.

You will take the verdict forms provided to you into the jury room and answer the questions asked.  When you have reached unanimous agreement as to your verdict, you will have your foreperson fill in your answers, and date and sign the verdict form.  Then inform the marshal that you have reached a verdict.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as a telephone, a cell phone, smart phone, iPhone, Blackberry or computer; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog or website such as Facebook, MySpace, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.  You can only discuss the case in the jury room with your fellow jurors during deliberations.  I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom.  Information on the internet or available through social

media might be wrong, incomplete, or inaccurate.  You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have.  In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom.  Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case.  This would unfairly and adversely impact the judicial process.

You are about to go into the jury room to begin your deliberations.  You will have the exhibits with you.  If you want any of the testimony read, you must request that.  Please remember that it is not always easy to locate what you might want, so be as specific as possible in your request.  Any requests for testimony, any questions, or any communication with the Court should be made to me in writing, signed by your foreperson, and given to one of the marshals.  I will respond to your request as promptly as possible either in writing or by having you return to the courtroom so that I can address you orally.  But I must caution you that in your communications with the Court you should never specify your numerical division at any time.

It is proper to add a final caution.  Nothing that I have said in these instructions—and nothing that I have said or done during the trial—has been said or done to suggest to you what I think your verdict should be.  What the verdict shall be is your exclusive duty and responsibility.

Thank you.