UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROMAG FASTERNERS, INC., <br>    *Plaintiff,* <br> *v.* <br> FOSSIL, INC., *et al.*, <br>    *Defendants*. | Civil No. 3:10cv1827 (JBA) <br><br> August 14, 2014 |

**RULING ON MOTION FOR ATTORNEY'S FEES**

On April 3, 2014, after a seven-day trial, a jury returned a verdict finding Defendants Fossil, Inc. and Fossil Stores I, Inc. ("Fossil") liable for trademark infringement, false designation of origin, state common law unfair competition, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA").  (*See* Jury Verdict [Doc. # 417].)  The jury also found Fossil and Macy's, Inc. and Macy's Retail, Inc. ("Macy's") liable for patent infringement.  (*Id.*)  The jury returned a verdict of no liability for the remaining defendants, and found that neither Fossil nor Macy's had willfully infringed Plaintiff Romag Fasteners, Inc.'s ("Romag") patent or trademark.  (*Id.*)  The jury made an advisory award of $90,759.36 of Fossil's profits for trademark infringement under an unjust enrichment theory and $6,704,046.00 of Fossil's profits for trademark infringement under a deterrence theory and determined that 99% of Fossil's profits were attributable to factors other than its infringement of the ROMAG mark.  (*Id.*)  Finally, the jury awarded a reasonable royalty of $51,052.14 against Fossil and $15,320.61 against Macy's for patent infringement.  (*Id.*)

The Court then held a two-day bench trial on April 8 and 9, 2014 to address the remaining equitable issues in the case.  The Court ultimately concluded that Defendants had failed to establish their equitable defenses of unclean hands or breach of the duty to

mitigate, but that they had sustained their burden with respect to the equitable defense of laches, and reduced the jury's award of a reasonable royalty by 18% to an award of $41,862.75 against Fossil and an award of $12,562.90 against Macy's.  (*See* Findings of Fact and Conclusions of Law [Doc. # 471] at 40–41.)  The Court also imposed sanctions on Plaintiff for its conduct in seeking a Temporary Restraining Order ("TRO") in this case, holding that Plaintiff may not recover its attorney's fees in connection with the TRO proceedings.  (*Id.* at 40.)  Finally, the Court held as a matter of law that because the jury found that Fossil's trademark infringement was not willful, Romag was not entitled to an award of Fossil's profits.  (*Id.* at 40–41.)  The Court also granted Plaintiff's post-trial motion for entry of judgment as a matter of law against Macy's with respect to patent infringement.  (*See* Ruling on Post-Trial Motions [Doc. # 480] at 23–24.)

Plaintiff now moves [Doc. # 450] for an award of approximately $3 million in attorney's fees and costs pursuant to the Patent Act, the Lanham Act, and CUTPA. Plaintiff also moves [Doc. # 378] for sanctions in the form of its fees and costs incurred in conducting several depositions on the eve of trial.  Defendants oppose both motions, arguing that Romag is not entitled to sanctions, is not entitled to recover its costs and fees under any of the cited statutes, and in the event the Court does find that Plaintiff is entitled to a fee award, that Romag's requested fees are unreasonable and should be substantially reduced.  In response to Defendants' arguments, Plaintiff subpoenaed Defendants' billing records, pursuant to *Serricchio v. Wachovia Securities, LLC*, 706 F. Supp. 2d 237 (D. Conn. 2010).  Defendants have objected to the subpoenas, and Plaintiff also moves [Doc. # 466] to compel Defendants' responses.  On June 10, 2014, this Court held a status conference to resolve the potential scheduling issues raised by Plaintiff's motion to compel.  The Court ordered the parties to fully brief the issue of entitlement to

2

attorney's fees, and stayed all deadlines with respect to the motion to compel pending a ruling on that issue. (*See* Endorsement Order [Doc. # 468].) The Court also stayed the deadline for Plaintiff's reply to Defendants' substantive objections to its requested fees and costs. (*Id.*) Therefore, this opinion will address only the issue of Plaintiff's entitlement to recover its fees under the Patent Act, the Lanham Act, and CUTPA, in addition to Plaintiff's motion for supplemental relief. Plaintiff's motion to compel and Defendants' substantive objections to Plaintiff's claimed fees and costs will be addressed in a separate opinion.

For the reasons that follow, the Court concludes that Plaintiff is entitled to recover its reasonable attorney's fees and costs in this case pursuant to the Patent Act and CUTPA. Additionally, Plaintiff's motion for sanctions will be denied.

**I.     Discussion**

Plaintiff, having prevailed on each of its claims against Fossil and on two of its claims against Macy's, now moves for an award of attorney's fees pursuant to the Patent Act, the Lanham Act, and CUTPA. Defendants oppose Plaintiff's motion, arguing that Plaintiff is not entitled to an award of fees and costs under any of those statutes.

   **A.     The Patent Act**

The Patent Act provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 28 U.S.C. § 285. In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), the Supreme Court recently clarified the standard for awarding attorney's fees under this provision. The Court rejected the rigid standards set forth by the Federal Circuit and held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the

unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* at 1755. For example, the Court noted that "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 1757. Furthermore, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* The Supreme Court also noted that the non-exclusive list of factors it identified for awarding fees under the Copyright Act would be useful in a court's case-by-case analysis under the Patent Act. *Id.* at 1755 n.6. These factors include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (internal citations and quotation marks omitted). Finally, the Court held that "[s]ection 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden." *Id.* at 1758.

Plaintiff argues that this case is an "exceptional" case as the Supreme Court has recently defined that term. Specifically, Plaintiff argues that Fossil failed to withdraw its meritless invalidity defenses before trial and that Fossil's argument that the snaps used in its handbags were genuine lacked any evidentiary support at trial. Finally, Plaintiff argues that Fossil's entire litigation strategy was vexatious, in that Fossil's invalidity challenge jeopardized Romag's primary business asset in an attempt to intimidate Romag into relinquishing its infringement claims.

With respect to what Plaintiff characterizes as Defendants' groundless argument that the snaps on the accused handbags were genuine, Defendants assert that because the

4

Court denied Plaintiff's Rule 50(a) motion on this issue, their argument regarding whether or not the snaps were genuine cannot have been so frivolous as to merit an award of attorney's fees. The Second Circuit has recognized that "[c]ertain types of judicial rulings strongly indicate that a plaintiff's claim should not be deemed frivolous, groundless, or unreasonable. . . . [A] claim [may not] properly be deemed groundless where [a party] has made a sufficient evidentiary showing to forestall summary judgment and has presented sufficient evidence at trial to prevent the entry of judgment against him as a matter of law." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 765, 770–71 (2d Cir. 1998). Thus, although the evidence that the Fossil handbags produced by Superior contained non-genuine snaps was overwhelming, this Court's ruling denying Plaintiff's Rule 50(a) motion precludes a finding that Defendants' argument was so frivolous or groundless as to justify an award of fees.

With respect to Defendants' invalidity claims, Defendants argue that their indefiniteness defense was largely tied to their proposed claim construction, and that because Judge Young[1] did not hold *Markman* proceedings prior to the summary judgment deadline, it was not inappropriate for Defendants to continue to pursue that argument at the summary judgment phase of the case. Furthermore, Defendants argue that they announced their intent not to pursue their other invalidity defenses at the pre-trial conference, and thus Plaintiff need not have presented evidence with respect to those defenses at trial. While Judge Young did hold that his claim construction ruling rendered Defendants' expert's opinion "immaterial," he also characterized that opinion as "nothing more than an *ipse dixit*," which could not have legally sufficed as substantial evidence of

---

[1] This case was assigned to multiple judges before it was transferred to the undersigned for trial. Judge Young of the District of Massachusetts presided over the claim construction and summary judgment proceedings in this action.

invalidity.  (*See* Ruling on Summ. J. [Doc. # 260] at 57.)  Judge Young further likened Defendants' evidence in support of its indefiniteness defense to a "woefully inadequate showing" and granted summary judgment *sua sponte* in favor of Plaintiff on the claim.  (*Id.* at 54.)  Based on the tenor of Judge Young's opinion, it is clear to this Court that Defendants' argument with respect to their patent invalidity defense of indefiniteness bordered on frivolous.

With respect to Defendants' other invalidity defenses, Defendants gave no indication of their intent not to pursue those claims until the pre-trial conference:

<div style="margin-left:2em">

The Court:   Two question areas.  One is the defendant—are the defendants asserting the affirmative defenses to the patent claim of obviousness and prior art?
Mr. Cass:    At this point, your Honor, we are not going to assert those defenses.

</div>

(Pre-Trial Tr. Vol. I [Doc. # 359] at 7; *see also id.* at 90 ("I think we indicated that validity defenses would not be asserted.").)  Defendants presented no evidence in support of their remaining invalidity defenses at trial, but did not formally withdraw these defenses with prejudice until after trial, when Romag moved for judgment as a matter of law.  (*See* Charge Conf. Tr. [Doc. # 439] at 45.)  Defendants also maintained their patent expert on their witness list throughout trial, which Plaintiff argues necessitated its presentation of evidence with respect to patent validity in its case-in-chief.  The '126 patent represents Romag's principal business asset, and thus Romag's decision to continue to present evidence to counter Defendants' invalidity defenses until the claims were formally withdrawn with prejudice was entirely foreseeable.

Although Defendants' arguments with respect to non-infringement were not entirely groundless, the Court concludes that Defendants' pursuit of its indefiniteness invalidity defense, and its failure to formally withdraw its remaining invalidity defenses

until after the close of evidence weigh in favor of an award of fees in this case. Furthermore, the Court notes that this case raises special concerns regarding compensation and deterrence of patent infringement. Although snap fasteners represent a minute portion of Defendants' costs and profits, the '126 patent is Plaintiff's primary business asset. Thus, there is a risk that plaintiffs similar to Romag could be discouraged from bringing claims that may garner only small awards but are nonetheless vital to the survival of their businesses where defendants, as was the case here, aggressively pursue invalidity counterclaims in an attempt to prolong litigation and exponentially increase the cost and risk of pursuing a lawsuit. Therefore, the Court concludes, based on the totality of the circumstances and a consideration of the factors suggested in *Octane Fitness*, that this is an "exceptional" case within the meaning of the Patent Act and that Plaintiff is entitled to recover its reasonable attorney's fees under that statute. Defendants urge this Court to exercise its discretion not to grant Plaintiff's fee petition even if it concludes that this is an exceptional case, arguing that Plaintiff's laches and its conduct in pursuit of the TRO in this case militate against such an award. However, the Court has already ordered that Plaintiff may not recover its fees in connection with the TRO and reduced the jury's reasonable royalty award in light of Plaintiff's laches. Because these issues were limited in scope and have already been addressed, the Court sees no need to further sanction Plaintiff by denying an award of fees in this case.

### B.  The Lanham Act

The Lanham Act provides that "in exceptional cases [the court] may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Second Circuit has held that this provision "allows recovery of a reasonable attorney's fee only on evidence of fraud or bad faith." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83,

111 (2d Cir. 2012) (internal citations, quotation marks, and alterations omitted); *see also Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003) (noting that the Second Circuit understands the term "exceptional case" in the Lanham Act to mean "fraud or bad faith, or willful infringement" (internal citations and quotation marks omitted)). "In other words, [the Second Circuit has] concluded that the key is willfulness on the part of the defendants: The finding of willfulness determines the right to attorney's fees." *Louis Vuitton*, 676 F.3d at 111 (internal citations and quotation marks omitted); *see also Mister Softee of Brooklyn, Inc. v. Boula Vending, Inc.*, 484 F. App'x 623, 624 (2d Cir. 2012) ("[W]e have said that a finding of willfulness, fraud, or bad faith is a prerequisite to finding a case sufficiently exceptional to warrant an award of fees under section 1117(a)." (internal citations, quotation marks, and emphasis omitted)).

Plaintiff urges this Court to reject the Second Circuit's current interpretation of the attorney's fees provision in the Lanham Act and instead apply the more flexible standard set forth by the Supreme Court in *Octane Fitness*. In support of this argument, Plaintiff notes that the fee provisions in the Lanham Act and the Patent Act are nearly identical, and that the *Octane Fitness* Court cited a decision interpreting the term "exceptional" in the Lanham Act in support of its general definition of that term with respect to the Patent Act. However, as Defendants correctly note, the Supreme Court was interpreting only the Patent Act and not the Lanham Act in *Octane Fitness*. As such, the Second Circuit cases interpreting the fee provision of the Lanham Act remain good law and represent binding precedent on this Court.

Here the jury found that Fossil's infringement was not willful, which finding the Court upheld in its ruling on the parties' post-trial motions. Thus, Plaintiff may not rely on Defendants' willful conduct to justify an award of fees in this case. Plaintiff's main

8

argument in support of finding that this is an "exceptional" case under the Lanham Act is that Defendants' claim with respect to "back door" sales of genuine snaps was groundless. However, as discussed above, the Court has rejected this argument in light of its ruling on Plaintiff's Rule 50(a) motion.  Although the Court concludes that the case is "exceptional" under the more lenient Patent Act standard announced in *Octane Fitness*, it does not find that Defendants acted fraudulently or in bad in faith by taking the position they did with respect to trademark infringement.  Therefore, the Court concludes that, in the absence of bad faith, fraud, or willfulness on the part of Defendants, this case is not "exceptional" within the meaning of the Lanham Act and Plaintiff is not entitled to recover its reasonable attorney's fees under that statute.

    **C.**     **The Connecticut Unfair Trade Practices Act**

CUTPA provides that "[i]n any action brought by a person under this section, the court may award, to the plaintiff, in addition, to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery." Conn. Gen. Stat. § 42-110g(d).  Connecticut courts have recognized that "[t]he language of the statute is clear and unambiguous; the awarding of attorney's fees is within the discretion of the trial court." *Staehle v. Michael's Garage, Inc.*, 35 Conn. App. 455 (1994); *see also Gargano v. Heyman*, 203 Conn. 616, 622 (1987) ("Awarding . . . attorney's fees under CUTPA is discretionary . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done." (internal citations omitted)).  Thus, although Defendants are correct in their argument that the Court is not required to award fees in this case, as Plaintiff's comprehensive case law review suggests (*see* Pl.'s Reply [Doc. # 369] at 3–5), a survey of the precedent in this state indicates that unlike the Patent

Act and the Lanham Act, fee awards under CUTPA are the rule, rather than the exception.

Defendants argue that the Court should exercise its discretion not to award fees and costs in this case because CUTPA was only "minimally implicated" in these proceedings. "The public policy underlying CUTPA is to encourage litigants to act as private attorneys general and to engage in bringing actions that have as their basis unfair or deceptive trade practices. In order to encourage attorneys to accept and litigate CUTPA cases, the legislature has provided for the award of attorney's fees and costs." *Jacques All Trades Corp. v. Brown*, 42 Conn. App. 124, 131 (1996) (internal citations omitted). Defendants argue that because Plaintiff is a "well-heeled" litigant that has been more than able to finance this litigation, the public policy behind the CUTPA attorney's fees provision is not implicated by this case. Defendants cite the following passage from this Court's decision in *General Clutch Corp. v. Lowry*, 93cv1983 (JBA), Slip. Op. (D. Conn. July 11, 1997), in support of their argument:

> The Court is not persuaded otherwise by plaintiff's argument that it is entitled to attorney's fees because it acted as a private attorney general by prosecuting its CUTPA claim. While there is no dispute that CUTPA provides for attorney's fees in order to encourage private CUTPA litigation, there is little basis for this Court to conclude that plaintiff would have been unable or unwilling to initiate the present suit without the incentive of CUTPA attorney's fees. Plaintiff is a large corporation that has already "paid in full" more than a quarter of a million dollars in attorney's fees and costs in connection with this litigation. Plaintiff requested more than $20,000,000 in damages, and was actually awarded nearly $400,000. As defendants observe, the present action is not a case of David versus Goliath. Although CUTPA attorney's fees are clearly not limited to "Davids," the public policy behind the fee-shifting provision seems only minimally implicated when the Court requires a corporate "Goliath," which has brought a CUTPA claim as only one count of an expensive, high-stakes commercial litigation action, to comply fully with

the requirement that it demonstrate the reasonableness of any fee award it seeks.

*Id.* at 15–16 (internal citations and quotation marks omitted).

Although there are some similarities between the circumstances in *General Clutch* and those present here, *General Clutch* is readily distinguishable. In that case, the Court first found that the majority of the plaintiff's fees likely were likely statutorily barred by the Connecticut Uniform Trade Secrets Act and that the plaintiff had provided little guidance to the Court for separating those fees that were related to its trade secrets claims from those that were related to independent CUTPA claims. *Id.* at 12–13. The Court further held that the plaintiff had failed to meet its burden to show that its requested fees were reasonable because the plaintiff's fee position was supported only by billing records. *Id.* at 13–15. It was in the context of these findings that the Court determined that the public policy behind CUTPA would be "minimally implicated" by requiring a large corporate plaintiff to properly support its fee petition. By contrast, in the present case, Romag has carefully supported its fee petition with detailed billing records and affidavits. Furthermore, there is no statutory bar to an award of fees in this case. Although the Court has concluded that an award of fees is not justified under the Lanham Act, several circuits have determined that the Act does not preempt more favorable state law attorney's fees provisions. *See Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 41–42 (1st Cir. 2006); *Tonka Corp. v. Tonk-A-Phone, Inc.*, 805 F.2d 793, 794–95 (8th Cir. 1986).

Defendants also argue that Plaintiff's CUTPA claim was insignificant compared to its federal claims, as the issue of trademark infringement clearly dominated the trial in this case. Defendants surmise, in light of Plaintiff's decision to forgo any damages claim under CUTPA aside from its punitive damages and attorney's fees claims, that Plaintiff

likely brought its CUTPA claim solely to recover attorney's fees that Romag would have been otherwise unable to recover.  In *Manufacturers Technologies, Inc. v. Cams, Inc.*, 728 F. Supp. 75, 86 (D. Conn. 1989), a court in this district determined that where a plaintiff sought "to use the CUTPA violation as a vehicle to recover attorneys' fees," it would exercise its discretion not to grant such an award "[g]iven the relative lack of significance of the CUTPA claims vis-à-vis the other claims asserted." *Id.*  Defendants further argue that Plaintiff's CUTPA claim is insignificant compared to its trademark and patent infringement claims because the majority of the accused snaps were not sold in Connecticut.  This Court has previously recognized that Connecticut has a limited public interest under CUTPA in conduct occurring outside the state.  *See Victor G. Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc.*, 406 F. Supp. 2d 175, 200 (D. Conn. 2005), *aff'd in pertinent part on reconsideration*, 409 F. Supp. 2d 112 (D. Conn. 2006).

However, Defendants' arguments notwithstanding, the Court does not believe that Plaintiff's CUTPA claim was so insignificant as to merit the denial of Plaintiff's attorney's fees and costs.  Because Plaintiff itself is a Connecticut business and because the unfair practice at issue in this case—i.e. the sale of counterfeit snaps—undisputedly occurred at least in part in Connecticut, the state does have an important interest in deterring the conduct that gave rise to Fossil's liability under CUTPA.  Additionally, although Romag may have used its CUTPA claim as a "vehicle" to recover attorney's fees, as discussed above, this case raises unique deterrence concerns that are properly vindicated by the public policy behind the CUTPA attorney's fee provision.  Furthermore, although an award of attorney's fees is not warranted under the Lanham Act, the Lanham Act does not preempt the more liberal attorney's fees provision in CUTPA, and, in light of Connecticut's defined interest in this case, it would offend

principles of comity to declare that a fee award was unwarranted simply because the federal causes of action predominated at trial.  Finally, as discussed above, the Court is not persuaded by Defendants' argument that Plaintiff's laches and its conduct with respect to the TRO in this case was so inequitable as to justify the denial of any fee award.  Such conduct did not permeate the trial and has already been addressed by a sanctions award and a reduction of damages.  Therefore, the Court will exercise its discretion under CUTPA to award Plaintiff its attorney's fees and costs in this case.

Defendants argue that if the Court awards Romag its fees and costs under CUTPA, the Court should apportion the award so that Romag may not recover fees connected to its patent and trademark claims.  Because the Court has found that Plaintiff is entitled to recover its attorney's fees under the Patent Act, the apportionment of fees related solely to Plaintiff's patent claims is not necessary.  Plaintiff argues that because the factual predicate for its CUTPA claim was identical to the factual predicate for its trademark infringement and unfair competition claims, no apportionment is necessary with respect to those claims.  The Connecticut Supreme Court has recognized that "when certain claims provide for a party's recovery of contractual attorney's fees, but others do not, a party is nevertheless entitled to a full recovery of reasonable attorney's fees if an apportionment is impracticable because the claims arise from a common factual nucleus and are intertwined."  *Total Recycling Servs. of Connecticut, Inc. v. Connecticut Oil Recycling Servs., LLC*, 308 Conn. 312, 333 (2013).  The Court agrees with Plaintiff that its CUTPA claim was so intertwined with its other causes of action that the vast majority of its costs and fees cannot be apportioned between the claims at issue in this case.  However, the Court can identify one category of costs and fees that are associated solely with Plaintiff's trademark infringement fees and thus should be apportioned—those costs

and fees that were incurred solely in relation to Plaintiff's claim for an award of Defendant's profits under the Lanham Act. Thus, Plaintiff is not entitled to recover any costs and fees that were incurred solely in pursuit of an accounting of Defendants' profits.

Finally, Defendants argue that Plaintiff is not entitled to recover its non-taxable costs under CUTPA. The Connecticut Supreme Court has not yet addressed the issue of whether non-taxable costs may be awarded pursuant to § 42-110g(d). *See Ubrich v. Groth*, 310 Conn. 375, 461 (2013) (declining to address the issue). Thus, this Court must predict how the Connecticut Supreme Court would rule if squarely confronted with this issue. *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005). The Second Circuit has noted that courts should principally consider "the language of the state intermediate appellate courts to be helpful indicators of how the state's highest court would rule." *Id.* "Rulings from such courts are a basis for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (internal citations and quotation marks omitted). Although at least one court in this district has concluded that § 42-110g(d) permits an award of costs beyond those identified as taxable costs in state statutes, that case was decided before the Appellate Court of Connecticut addressed the issue. *See Bristol Tech., Inc. v. Microsoft Corp.*, 127 F. Supp. 34, 82–83 (D. Conn. 2000). The Appellate Court of Connecticut has repeatedly recognized that a plaintiff may not recover costs under CUTPA beyond those costs recognized by statute as taxed costs. *See Taylor v. King*, 121 Conn. App. 105, 133–35 (2010); *Centimark Corp. v. Village Manor Assocs. Ltd. P'ship*, 113 Conn. App. 509, 540–41 (2009), *cert. denied*, 292 Conn. 907 (2009); *Miller v. Guimaraes*, 78 Conn. App. 760, 782–83 (2003). Although the reasoning of these cases has been criticized by several trial courts, the Connecticut Supreme Court has declined the

opportunity to overturn them, and thus the Court believes that the Connecticut Supreme Court would find that non-taxable costs are not recoverable under CUTPA. Therefore, Plaintiff is not entitled to recover its non-taxable costs in this case.

### D.     Motion for Supplemental Relief

Shortly before trial began, Plaintiff moved [Doc. # 378] for an award of sanctions, pursuant to 28 U.S.C. § 1927 and this Court's inherent authority, in the form of a Court order awarding Plaintiff its fees and costs associated with the trial deposition of Doug Dyment and the deposition of Gail Stoke and barring Defendants from calling Ms. Stoke as a witness at trial. Plaintiff argues that counsel for Defendants misrepresented Mr. Dyment's availability as a witness to the Court, thereby necessitating a costly, last-minute trial deposition of a key witness on the eve of trial. The Court denied Plaintiff's request for an order excluding Ms. Stoke as a witness (*see* Pre-Trial Conf. Tr. Vol. II [Doc. # 432] at 208), and reserved judgment on the issue of attorney's fees and costs. Defendants oppose this motion, arguing that they did not intentionally conceal information regarding Mr. Dyment's retirement and possible availability at trial from the Court.

"In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment and delay." *Enmon v. Prospect Capital Corp.,* 675 F.3d 128, 143 (2d Cir. 2012) (internal citations and quotation marks omitted). "Although both findings must be supported by a high degree of specificity in the factual findings, bad faith may be inferred only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Id.* (internal citations and quotation marks omitted). "The showing of bad faith required to support sanctions

under 28 U.S.C. § 1927 is similar to that necessary to invoke the court's inherent power. In practice, the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Id.* at 143–44 (internal citations and quotation marks omitted).

Prior to trial, Mr. Dyment, a Fossil employee, had been identified by both parties as a key fact witness and had been selected to serve as Fossil's corporate representative at trial. However, in late January 2014, Defendants indicated that they would not be calling Mr. Dyment as a witness or producing him at trial because he had unexpectedly retired. (*See* Pl.'s Mot. to Take Deposition [Doc. # 280] at 6.) In response to this information, Plaintiff sought leave from the Court to take Mr. Dyment's trial deposition. (*Id.*) Defendants sought leave [Doc. # 279] to substitute Ms. Stoke as the corporate representative of Fossil and offered to make her available for a deposition in Connecticut or New York. The Court held a telephonic conference regarding these issues on February 12, 2014. During the conference, the Court had the following colloquy with defense counsel:

| | |
|---|---|
| Mr. Cass: | . . . The sole reason I'm seeking to substitute Ms. Stoke for Mr. Dyment is because we need a corporate representative to sit through a two-week trial and he's retired, and that's an awful lot to ask a retired person to— |
| The Court: | I understand if you can't get him to come under any auspices, and as we set out at the beginning, you all agree he's unavailable. Here's how— |
| Mr. Cass: | Well, he's not—I don't want to overstate that he's not available because— |
| The Court: | Well, that's what you said though. |
| Mr. Cass: | Well, but not in the—you know, in terms of getting an agreement with him to come, I think we can get that. |

16

| | |
|---|---|
| The Court: | Okay. |
| Mr. Cass: | Or that was in the works. |
| The Court: | As a matter of— |
| Mr. Cass: | The problem is, you Honor, I can't count on that. I can't. If he decides the week before trial not to come, what do I do? |
| The Court: | All right. He's legally unavailable because he's more than 100 miles. He's outside your subpoena power. |
| Mr. Cass: | Exactly. |

(Conf. Tr. [Doc. # 324] at 27–28.) Ultimately, the Court granted Plaintiff's motion to take Mr. Dyment's trial deposition and permitted Defendants to substitute Ms. Stoke as Fossil's corporate representative. The parties made arrangements for Mr. Dyment's trial deposition to be conducted in Dallas, but the Friday before the deposition was to take place, counsel for Defendants emailed Plaintiff's counsel a copy of a January 22, 2014 contract between Mr. Dyment and Fossil in which Mr. Dyment agreed to make himself available for trial in Connecticut and Fossil agreed to compensate Mr. Dyment for his time. (*See* Dyment Contract, Ex. C to Geiger Decl. [Doc. # 373].)

Romag argues that Defendants' failure to bring this contract to the attention of the Court during the February 12, 2014 status conference and their belated disclosure of the document to Plaintiff on the eve of Mr. Dyment's trial deposition was a deliberate attempt to mislead the Court and thus constitutes sanctionable bad faith conduct. The Court disagrees. Counsel for Defendants disclosed to the Court that such an agreement was "in the works," and the Court will take counsel at his word that he did not know that the contract had already been executed when he made this representation. Counsel was careful to clarify that Mr. Dyment was "legally" unavailable, and that Defendants' request to substitute witnesses was made to protect against the chance that Mr. Dyment might refuse to appear. The contract between Fossil and Mr. Dyment could not have been

17

enforced to compel Mr. Dyment's presence at trial, and as a resident of Texas, he was outside the range of this Court's subpoena power. Therefore, the contract notwithstanding, Mr. Dyment was "legally" unavailable, and thus defense counsel's representations do not appear to have been deliberately false or misleading. Furthermore, the existence of the contract was disclosed to Plaintiff prior to the deposition, albeit at the last moment. Even if Plaintiff and the Court had known of this contract at the time of the February 12, 2014 conference, it is likely that Mr. Dyment's trial deposition still would have been necessary, because in light of his retirement,[2] Defendants could not guarantee his presence at trial. Based on a review of the record, the Court concludes that Defendants' conduct with respect to the substitution of Ms. Stoke and Mr. Dyment's trial deposition did not constitute bad faith warranting sanctions. Therefore, Plaintiff's motion for supplemental relief in the form of attorney's fees and costs is denied.[3]

## II.   Conclusion

For the foregoing reasons, Plaintiff's Application [Doc. # 450] for Attorney's Fees and Costs is GRANTED in part, and Plaintiff's Motion [Doc. # 378] for Supplemental Relief is DENIED. Plaintiff is entitled to recover its reasonable fees and cost under CUTPA and the Patent Act. However, Plaintiff is not entitled to recover its fees under the Lanham Act, and thus may not recover any fees incurred exclusively in pursuit of Romag's claim for an award of Defendants' profits in connection with its trademark infringement claims. Plaintiff also may not recover its non-taxable costs under CUTPA.

---

[2] There is no evidence in the record to suggest that Mr. Dyment's decision to retire in January 2014 was anything other than a long-planned-for personal choice to stop working at a certain age.

[3] The Court notes that in light of its finding that Plaintiff is entitled to recover attorney's fees and costs under the Patent Act and CUTPA, most of Plaintiff's expenses with respect to the Dyment and Stoke depositions are likely recoverable.

Finally, as this Court ruled in its memorandum of decision after the bench trial, Plaintiff may not recover its costs and fees related to its pursuit of a TRO in this case.

In light of the existing scheduling order with respect to the fee petition, Defendants' opposition to Plaintiffs Motion [Doc. # 466] to Compel shall be filed no later than seven days after the issuance of this opinion. Any reply shall be filed within seven days of the filing of the opposition. In light of the Court's rulings excluding certain categories of fees—i.e., (1) fees incurred in pursuing the TRO, (2) fees incurred solely in pursuit of Plaintiff's Lanham Act claim for an award of Defendants' profits, and (3) non-taxable costs under CUTPA—Defendants are directed to submit a supplemental opposition limited to identifying objections to specific fees falling within those categories within seven days of the Court's ruling on the Motion to Compel. Plaintiff shall file its substantive reply within fourteen days of Defendants' supplemental opposition, or within fourteen days of Defendants' compliance with the Motion to Compel, if granted, whichever date is later.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 14th day of August, 2014.