UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROMAG FASTENERS, INC., <br>     *Plaintiff,* <br>     *v.* <br> FOSSIL, INC., FOSSIL STORES I, INC., MACY'S, INC., and MACY'S RETAIL HOLDINGS, INC., <br>     *Defendants.* | Civil No. 3:10cv1827 (JBA) <br><br> December 10, 2014 |

**RULING DENYING PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS**

On August 14, 2014, the Court granted Plaintiff's Application [Doc. # 450] for Attorney's Fees and Costs in part, permitting Plaintiff to recover its reasonable fees and costs under CUTPA[1] and the Patent Act[2] but not under the Lanham Act. (Ruling on Mot. Att'y Fees [Doc. # 481] at 18.) The Court did not, at that time, determine the amount of fees and costs due to Plaintiff. Plaintiff now moves [Doc. # 466] to compel compliance with the subpoenas it served on Defendants seeking Defendants' billing records and other specified documents. For the reasons that follow, Plaintiff's motion is denied.

    **I.**    **Background**

On April 28, 2014, Plaintiff filed an Application for Attorney's Fees and Costs. Defendants opposed the motion, partly on the grounds that the fees and costs Plaintiff sought were unreasonable. (Opp'n Att'y Fees [Doc. # 465] at 31.) Defendants argued in relevant part: (1) Plaintiff's Attorney Norman H. Zivin's hourly rate is excessive (*id.* at

---

[1] CUTPA permits a court to award a plaintiff "costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery." Conn. Gen. Stat. § 42-110g(d).

[2] The Patent Act provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.

32–33); (2) "The vast majority of Romag's legal work was performed by partners/principals . . . rather than junior attorneys" (*id.* at 34); (3) Romag's fee award "should be subject to across the board reduction to account for inappropriate billing" (block billing and entries for duplicative, excessive, or unnecessary work) (*id.* at 38–39); and (4) "Romag's application contains frivolous expenses which should be rejected, such as $1,250 for phone calls from the Four Seasons Resort in Costa Rica and $16,838.20 for over 100 handbags, only 4 of which were put into evidence" (*id.* at 39).

On May 30, 2014, Plaintiff served Defendants with subpoenas requesting the following documents:

1. All engagement letters, retainer letters, or other documents concerning the formation of, modification of, or description of the attorney-client relationship between [the law firm] and any Defendant in this action concerning this action or any issue related thereto.
2. All documents stating the billing rates, or range of billing rates, for any or all attorneys, paralegals, and staff of [the law firm] during the period of November 2010 through the present.
3. All documents stating the billing rates charged to any Defendant by [the law firm] in connection with the above-captioned action.
4. All billing records, attorneys' fees invoices, and time records of [the law firm] in connection with the above-captioned action, including, but not limited to, records or invoices describing the nature and amount of work performed by attorneys, paralegals, and staff.
5. All billing records and invoices pertaining to all expert fees incurred by [the law firm] or any Defendant in connection with the above-captioned action, including, but not limited to, testifying experts, consulting experts, and technology experts.[3]
6. All billing records and invoices pertaining to all litigation costs in connection with the above-captioned action, such as costs relating to depositions, transcripts, photocopying, telephone calls, meals, transportation, accommodations, legal research, and electronic discovery.

---

[3] Plaintiff has since withdrawn its request for records pertaining to expert fees. (*See* Reply [Doc. # 484] at 10 n.7.)

(Subpoena to Produce Docs., Ex. A to Mot. to Compel [Doc. # 466].)

Plaintiff subsequently filed a motion to compel compliance with its subpoenas, in which it argues that Defendants' billing records are likely to be relevant to Plaintiff's reply to Defendants' objections to its motion for fees.  Relying heavily on this Court's decision in *Serricchio v. Wachovia Securities, LLC*, 258 F.R.D. 43 (D. Conn. 2009), Plaintiff asserts that Defendants, having challenged its rates and hours as excessive "cannot claim that their law firms' hourly rates, their own litigation tactics and efforts, and their law firms' billing practices have absolutely no bearing on the question of whether Romag's attorneys are seeking compensation commensurate with the circumstances of this case."  (Mot. to Compel at 3–4.)

Defendants, for their part, argue that because their objections to Plaintiff's fee application are, unlike those of the defendant in *Serricchio*, "addressed to particular, specific categories of fees and expenses," "this Court is fully capable of evaluating" the reasonableness of their objections "without reference to [their] billing rates or fees." (Opp'n Mot. to Compel [Doc. # 482] at 2; *see id.* at 4.)  Defendants claim that *Serricchio* is further distinguishable because considerations "not addressed in *Serricchio*" regarding privilege, burden, and the need to avoid a second major trial on fees weigh heavily against granting Plaintiff's motion here.  (*Id.*)

II.   **Legal Standard**

Federal Rule of Civil Procedure 26(b) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . [meaning] if the discovery appears reasonably calculated to lead to the

3

discovery of admissible evidence." Rule 45 permits a party to issue a subpoena "command[ing] [a person] to produce documents or tangible things or to permit inspection [of premises]." Fed. R. Civ. P. 45(d)(A). If an objection is made to such a subpoena, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(B)(i).

To determine a reasonable attorney's fee under CUTPA or the Patent Act, courts begin by assessing what rate a willing client would be willing to pay, keeping in mind the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[4] *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 493 F.3d 110, 118 (2d Cir. 2007) ("*Arbor Hill I*"), *amended on other grounds by* 522 F.3d 182, 184 (2d Cir. 2008) ("*Arbor Hill II*") (determining reasonable fees in the context of 42 U.S.C. § 1988); *see Emerald Investments, LLC v. Porter Bridge Loan Co.*, No. CIV.A. 3:05-CV-1598J, 2007 WL 1834507, at *5 (D. Conn. June 25, 2007) (applying the *Arbor Hill* approach in a CUTPA case to calculate the presumptively reasonable fee); *City of Burlington v. Dague*, 505 U.S. 557, 561–62 (1992) (holding that because many federal fee-shifting statutes use the language "reasonable attorney fees," "case law construing what is 'reasonable' applies uniformly to all of them"). Courts "then use that reasonable hourly rate to calculate . . . the 'presumptively reasonable fee.'" *Arbor Hill I*, 493 F.3d at

---

[4] The *Johnson* factors include (1) the time and labor required by an attorney; (2) the novelty and difficulty of the questions presented by the litigation; (3) the level of skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney because of acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

118. Once the court has determined the "presumptively reasonable fee," it "may still adjust that amount" upward or downward "based on relevant factors specific to the instant case," such as the level of success the plaintiff attained.[5] *Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, No. 3:03-CV-599 (CFD), 2011 WL 721582, at *3 (D. Conn. Feb. 22, 2011).

### III.   Discussion

Plaintiff requested four categories of documents from Defendants: (1) billing rates for all attorneys, paralegals, and staff from November 2010 to the present; (2) billing rates charged in connection with this litigation; (3) billing records, invoices, and time records in connection with this case; and (4) billing records and invoices pertaining to litigation costs in connection with this case.  Each request is addressed below.

### A.   Billing Rates

Plaintiff argues that in light of Defendants' objections to its counsel's hourly rates, it is appropriate for the Court to consider the rates of Defendants' own counsel.  In determining a reasonable hourly rate in connection with an application for attorney's fees, district courts attempt to "step[ ] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill I*, 493 F.3d at 112.  Thus, courts attempt to "ascertain whether 'the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058–59 (2d Cir. 1989) (quoting *Blum v. Stenson*, 465 U.S.

---

[5] However, in accord with the specific statutory language in CUTPA, for purposes of determining fees under CUTPA, "the question [of] whether plaintiff achieved a 'level of success' . . . cannot be answered . . . with reference to the dollar recovery as it is in other contexts." *Bristol Tech., Inc. v. Microsoft Corp.*, 127 F. Supp. 2d 64, 68 (D. Conn. 2000).

5

886, 896 n.11 (1984)).  Contrary to Plaintiff's claim, the Court's inquiry into the prevailing rate in the relevant community is not likely to be assisted by the production of opposing counsel's rates in this case.  *See Blowers v. Lawyers Co-op. Pub. Co., Inc.*, 526 F. Supp. 1324, 1328–29 (W.D.N.Y. 1981) ("The hourly rates charged to defendants by their attorneys . . . is simply not relevant in determining the prevailing hourly rate in the area.").  This determination is based on the content of a petitioning party's submissions documenting hourly billing rates in similar litigation charged by comparable community practitioners.  Excessive hourly rate objections are frequently raised in opposition to petitions for attorney's fees, and district courts are well experienced in conducting the legal reasonableness inquiry and assessing such objections without obtaining the hourly rates the defendants' counsel billed.

### B.  Billing Records

Defendants raise two objections to the number of hours Plaintiff claims were spent on particular tasks.  First, Defendants argued that a disproportionate share of Plaintiff's hours was billed by partners rather than junior attorneys.  (Opp'n Att'y Fees at 34.)  Second, Defendants request an "across the board reduction" to Plaintiff's hours because counsel utilized block billing and counsel's billing entries were duplicative and excessive.  (*Id.* at 38–39.)  Plaintiff contends that in order to assess these objections, the Court needs to view Defendant's billing records.

However, the nature of the objections Defendants raised can be evaluated by this Court based on its knowledge of the case, relevant caselaw, experience, and the type of detail in the billing records Plaintiff produces to support its petition for fees.  The examination of opposing counsel's records and how it allocated its defense work offers little assistance to the Court in its consideration of the substantive reasonableness of

Plaintiff's fee petition and the contents of Defendants' objections. To the extent Plaintiff's records reflect duplicative or excessive hours billed or utilize block billing whose imprecision hampers the Court's inquiry, the Court will adjust Plaintiff's compensable hours accordingly without regard to Defendants' billing style and practices. Defendants' objections regarding duplication will be evaluated by examination of Plaintiff's task entries which, if adequately detailed, should show non-duplication of the work for which Plaintiff seeks a fee award.

### C. Costs

Plaintiff's final request, for Defendants' records of its costs, is based on Defendants' objection to several of the specific expenses for which Plaintiff seeks reimbursement. In their opposition to Plaintiff's fee motion, Defendants argue that "Romag's application contains frivolous expenses which should be rejected, such as $1,250 for phone calls from the Four Seasons Resort in Costa Rica and $16,838.20 for over 100 handbags, only 4 of which were put into evidence." (*Id.* at 39.) The irrelevance of Defendants' invoices for other expenses to the Court's consideration of these claimed expenses is plain. Defendants' expenses simply have no bearing on the reasonableness of Plaintiff's expenses.

### D. Burden

The Supreme Court has admonished district courts that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Defendants maintain that this is essentially what Plaintiff requests because producing Defendants' billing records would impose a substantial burden on them, particularly given the privilege review that would be necessary. (Opp'n Mot. to Compel at 12.) Whatever the merits of Defendants' claim of burden, it is clear to the Court that

7

the production of Defendants' billing records will include countless privilege objections of varying merit requiring extensive in camera reviews that will substantially and unnecessarily burden the Court in this case that has already been over-litigated and overly contentious. Where, as here, Defendants have put forth their specific objections to specific aspects of Plaintiff's time-and-task records, the benefit to be gained from an examination of Defendants' billing records is likely to be slight in comparison to the burden that will be imposed if Defendants are required to produce the records Plaintiff seeks. *Compare Serricchio,* 258 F.R.D. at 44, 47 (denying motion to quash subpoena of opposing counsel's billing records where the defendant's objections to the plaintiff's fee petition were excessively vague and essentially put the plaintiff's "entire approach to th[e] case at issue"), *with Barati v. Metro-North R. Co.*, 939 F. Supp. 2d 153, 157 n.4 (D. Conn. 2013) (granting motion to quash subpoena of opposing counsel's billing records where the defendant's opposition to the plaintiff's fee petition "raised detailed objections to specific billing entries based on well-established law").

## IV.     Conclusion

For the foregoing reasons, Plaintiff's Motion [Doc. # 466] to Compel Compliance with Subpoenas is DENIED. Consistent with the Court's August 14, 2014 Ruling [Doc. # 481], Defendants are directed to submit, within seven days of this Ruling, a supplemental opposition to fees limited to identifying which categories of fees should be excluded pursuant to the Court's decision to disallow fees incurred in pursuing the TRO, fees incurred solely in pursuit of Plaintiff's Lanham Act claim for an award of Defendants' profits, and non-taxable costs under CUTPA. Plaintiff shall file its substantive reply within 14 days of Defendants' supplemental opposition.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 10th day of December, 2014.