UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROMAG FASTENERS, INC., <br>    *Plaintiff*, <br> *v.* <br> FOSSIL, INC., FOSSIL STORES I, INC., MACY'S, INC., and MACY'S RETAIL HOLDINGS, INC., <br>    *Defendants*. | Civil No. 3:10cv1827 (JBA) <br><br> March 28, 2016 |

**RULING ON PLAINTIFF'S SUPPLEMENTAL MOTION FOR ATTORNEYS' FEES**

Following this Court's ruling granting with modification Plaintiff's Motion for Attorneys' Fees, Plaintiff moves [Doc. # 508] for fees and costs expended in litigating the motion for attorneys' fees and other post-trial motions. For the reasons that follow, Plaintiff's motion is granted with modification.

**I. Legal Standard**

In determining a reasonable attorney's fee under CUTPA or the Patent Act, courts begin by assessing what hourly rate a reasonable client would be willing to pay, keeping in mind the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[1] *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 493 F.3d 110, 118 (2d Cir. 2007) ("*Arbor Hill I*"), *amended on other grounds by* 522 F.3d 182, 184 (2d Cir.

---

[1] The *Johnson* factors include (1) the time and labor required by an attorney; (2) the novelty and difficulty of the questions presented by the litigation; (3) the level of skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney because of acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

2008) ("*Arbor Hill II*") (determining reasonable fees in the context of 42 U.S.C. § 1988); *see Emerald Investments, LLC v. Porter Bridge Loan Co.*, No. CIV.A. 3:05-CV-1598J, 2007 WL 1834507, at *5 (D. Conn. June 25, 2007) (applying the *Arbor Hill* approach in a CUTPA case to calculate the presumptively reasonable fee); *City of Burlington v. Dague*, 505 U.S. 557, 561–62 (1992) (holding that because many federal fee-shifting statutes use the language "reasonable attorney fees," "case law construing what is 'reasonable' applies uniformly to all of them"). Courts "then use that reasonable hourly rate to calculate . . . the 'presumptively reasonable fee.'" *Arbor Hill I*, 493 F.3d at 118. Once the court has determined the "presumptively reasonable fee," it "may still adjust that amount" upward or downward "based on relevant factors specific to the instant case," such as the level of success the plaintiff attained.[2] *Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, No. 3:03-CV-599 (CFD), 2011 WL 721582, at *3 (D. Conn. Feb. 22, 2011).

## II. Discussion

Plaintiff, who was represented by three law firms in this case, seeks fees totaling $395,556.25[3] ($176,050.00[4] for Brenner, Saltzman & Wallman LLP ("BSW"), $211,541.25[5] for

---

[2] However, in accord with the specific statutory language in CUTPA, for purposes of determining fees under CUTPA, "the question whether plaintiff achieved a 'level of success' . . . cannot be answered . . . with reference to the dollar recovery as it is in other contexts." *Bristol Tech., Inc. v. Microsoft Corp.*, 127 F. Supp. 2d 64, 68 (D. Conn. 2000).

[3] This figure includes the $20,000 Plaintiff seeks prospectively to cover its work on the reply brief related to the motion at issue here. (*See* Mem. Suppl. Mot. Fees [Doc. # 508] at 9.)

[4] This figure includes the $10,000 BSW estimates it will charge for its work on the reply brief related to the motion at issue here. (*See* Schaefer Suppl. Decl. [Doc. # 509] ¶ 11.)

[5] This figure includes the $10,000 CD estimates it will charge for its work on the reply brief related to the motion at issue here. (*See* Sayour Decl. [Doc. # 510] ¶ 9.)

Cooper & Dunham LLP ("CD"), and $7,965.00 for Wiggin and Dana LLP ("WD")), expert fees totaling $4,172, and costs totaling $13,328.96. (Suppl. Mot. for Fees at 1–3, 9.)

Defendants do not object to the hourly rates sought by Plaintiff's counsel. Instead, they argue: (1) the hours claimed by Plaintiff's counsel are unreasonably high; and (2) the presumptively reasonable fee should be reduced to account for Plaintiff's limited success.

### A. Reasonableness of Hours Requested

Defendants contend that Plaintiff should not recover fees for several unsuccessful motions, and that the number of hours for which Plaintiff seeks compensation is unreasonably high. They seek a 20% reduction in the number of hours claimed.

Specifically, Defendants assert that Plaintiff should not be awarded fees for time spent on its unsuccessful motion to compel production of Defendants' billing records and the related subpoenas, nor should it be awarded fees for time spent on its opposition to Defendants' Rule 50/59 motion (although the Court denied the motion without prejudice) because that motion related to the issue of profits. (Opp'n [Doc. # 517] at 12, 13.) Plaintiff responds that "the fact that the Court, in its discretion, concluded that it did not need Defendants' billing records to decide the issues before it does not mean that the effort to obtain those records was unjustified," and with respect to the Rule 50/59 motion, Plaintiff should be able to recover its fees because it succeeded in "persuad[ing] the Court to deny Fossil the relief it requested." (Reply [Doc. # 518] at 6.)

The arguments of both parties have merit. Plaintiff's motion to compel was unquestionably unsuccessful, and because that work is separable from other, compensable work, a reduction is appropriate. However, no reduction is appropriate with respect to Plaintiff's work in opposing Defendants' Rule 50/59 motion because, as Plaintiff notes, it succeeded in that

3

endeavor. Based on a review of Plaintiff's billing records, the Court concludes that reduction of **$22,666.50** ($14,625 from BSW and $8,041.50 from CD; WD does not appear to have worked on these issues) for work spent on the subpoenas and motion to compel is appropriate.

The Court does not, however, find any demonstrated merit in Defendants' contention that Plaintiff has claimed an unreasonably high number of hours for work on its fee petition, which required organizing and sorting through invoices spanning four years, a mammoth task in any case, but particularly here, given the level of contentiousness that has pervaded this litigation. Therefore, no further reduction will be taken from Plaintiff's claimed hours.

### B.  Adjustments

Defendants next seek a reduction of 1/3 to account for Plaintiff's limited success in their fee application. Although the Supreme Court has "rejected a *per se* proportionality rule, i.e., proportionally linking the prevailing party's attorneys' fees to the degree of monetary success achieved, *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986), it has also held that "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained," *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). Because "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount" where the "plaintiff has achieved only partial or limited success," courts may need to adjust the presumptively reasonable rate downward. *Barfield v. N.Y. City Health and Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Hensley*, 461 U.S. at 436).

Here, the parties dispute how successful Plaintiff's fee application was. Defendants, summing the fees and costs Plaintiff sought, contend that Plaintiff was awarded only 67% of the amount sought. (Opp'n at 8, 10–11.) Plaintiff responds that because 96% of the amount it now seeks is for fees and only 4% is for costs, "any apples-to-apples comparison to Romag's Initial

4

Application must also focus on attorneys' fees." (Reply at 2.) Because Plaintiff was awarded 80% of the fees it requested initially, no more than a 20% reduction would be appropriate here.[6] (*Id.*)

Plaintiff is surely correct that "[a] fee award is not a reflection of a blow-by-blow scorecard of every argument made during the course of a proceeding." (*Id.* at 3.) Nonetheless, the amount awarded to a party seeking fees can serve as a rough proxy of the level of success of that petition. *See Yurman Designs, Inc. v. PAJ, Inc.*, No. 98 CIV. 8697 (RWS), 2001 WL 797474, at *4 (S.D.N.Y. July 12, 2001) (reducing supplemental fee award by 80% to account for the fact that the party was awarded only 20% of the fees and costs it sought in its initial fee application). Plaintiff here was awarded 79.2% of the fees it initially sought and 19.9% of the costs it sought. However, the majority of the work that went into the petition and the major focus of the parties' briefing was on the fees portion of the petition. The Court will therefore reduce Plaintiff's requested award by **25%** to account for its limited degree of success.[7]

## C. Awardable Costs

Defendants object to only one category of claimed costs: expert fees. Plaintiff seeks $4,172 for expert witness Jeremy Mellitz, who opined on the issue of the reasonableness of the rates charged by Plaintiff's counsel. (Pl.'s Suppl. Mot. at 3; *see* Ex. F to Schaefer Suppl. Decl.) However, as Defendants note, the only expert fees this Court awarded in the initial application was pursuant to the Court's inherent authority to impose sanctions in the form of reasonable expert

---

[6] Plaintiff additionally argues that its "rate of financial success on its Initial Application is not relevant to determining the amount of attorneys' fees that should be awarded" here. (Reply at 3.)

[7] The Court is aware that not all of the fees claimed here pertain to work on the initial application. However, the majority (76%) of the fees sought ($298,831.41 of $395,556.25) are for work on that application, and the Court has taken this into consideration in reaching the 25% figure.

fees. No such sanctions are appropriate here, and Plaintiff puts forth no other basis for the award of expert fees.

As the Supreme Court held in *Henkel v. Chicago St. P., M & O Ry.* long ago, "[s]pecific provision as to the amounts payable and taxable as witness fees was made by Congress . . . . [A]dditional amounts paid as compensation, or fees, to expert witnesses cannot be allowed or taxed as costs in cases in the federal courts." 284 U.S. 444, 446 (1932). Under 28 U.S.C. § 1920, allowable costs include fees and disbursements for witnesses and compensation of court appointed experts.

As Mr. Mellitz was not a court appointed expert, he could only potentially recover fees as a witness, but 28 U.S.C. § 1821 limits such fees to witnesses "in attendance at any court of the United States . . . or before any person authorized to take his deposition." *See L & W Supply Corp. v. Acuity*, 475 F.3d 737, 741 (6th Cir. 2007) ("[E]xpert witness fees may not be taxed as costs at a court's discretion under Rule 54(d) because § 1920 does not provide for them. Therefore, Acuity is not entitled to recover expert witness fees (i.e., the hourly rate charged for the expert's time and services). It is, however, entitled as a matter of course to recover the witness costs provided for in § 1821, which are largely compensatory in nature."). "[T]he expert witness involved [here] did not appear in Court, except by an affidavit" attached to Plaintiff's fee petition, and he did not attend a deposition hearing. *Mikel v. Kerr*, 64 F.R.D. 93, 95 (E.D. Okla. 1973) *aff'd*, 499 F.2d 1178 (10th Cir. 1974). As such, Plaintiff is not entitled to costs for Mr. Mellitz, and **$4,172** will be deducted from Plaintiff's claimed costs.

**D. Summary**

BSW's claimed fee is $176,050.00, CD's claimed fee is $211,541.25, and WD's claimed fee is $7,965.00. Adding their legal research costs,[8] BSW's claimed fee is $179,621.23; CD's is $219,654.30; and WD's is $8,534.19. For the reasons discussed above, BSW's fee is reduced by $14,625 and CD's fee is reduced by $8,041.50, yielding the following presumptively reasonable fees: BSW: $164,996.23; CD: $211,612.80; WD: $8,534.19.

Each of these fees is further reduced by 25% to account for Plaintiff's limited success. Accordingly, Plaintiff is awarded the following fees: BSW: $123,747.17; CD: $158,709.60; and WD: $6,400.64, for a total of **$288,857.42.** In addition, the Court awards **$1,075.49** in costs.[9]

**III. Conclusion**

For the foregoing reasons, Plaintiff's Supplemental Motion [Doc. # 508] for Attorneys' Fees is GRANTED with modification. The Court awards **$289,932.91** in attorneys' fees and costs.

IT IS SO ORDERED.

\_\_\_\_\_/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 28th day of March, 2016.

---

[8] The Court is cognizant that the Local Rules of Civil Procedure proscribe the award of legal research fees as costs, D. Conn. L. Civ. R. 54(c)(7), but the fees are awarded here as part of the award of attorney's fees, not as taxable costs, as permitted under *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 91, 98 (2d Cir. 2004).

[9] As explained above, the costs of electronic research, totaling $12,253.47, were awarded as part of the fee award. The remaining costs sought were awarded as costs, less the $4,172 claimed in expert fees.