| | |
|---|---|
| ROMAG FASTENERS, INC., <br>     *Plaintiff,* <br>      *v.* <br> FOSSIL, INC., FOSSIL STORES I, INC., MACY'S, INC., and MACY'S RETAIL HOLDINGS, INC., <br>     *Defendants.* | Civil No. 3:10cv1827 (JBA) <br><br> August 16, 2018 |

### RULING ON PLAINTIFF'S REQUEST FOR REINSTATEMENT OF PATENT ACT ATTORNEY'S FEES AND COSTS AND AN AWARD OF LANHAM ACT ATTORNEY'S FEES AND COSTS

After a jury returned a verdict finding Defendants Fossil, Inc. (now known as Fossil Group, Inc.), and Fossil Stores I, Inc., liable for trademark infringement, false designation of origin, state common law unfair competition, violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), and patent infringement,[1] the Court granted Plaintiff Romag's request for attorney's fees under the Patent Act and CUTPA, but not under the Lanham Act. The parties both appealed that Ruling, and as discussed below, the Federal Circuit vacated and remanded. Plaintiff now moves[2] [Doc. # 543] for reinstatement of the Patent Act attorney's fees and costs and for an award of Lanham Act attorney's fees and costs. Oral Argument was held on April 17, 2018. For the following reasons, Plaintiff's Motion is denied and the attorney's fee award is reduced by

---

[1] Defendants Macy's Inc. and Macy's Retail Inc. were also found liable for patent infringement. Reference to Fossil or Defendants in this ruling includes both Fossil Group Inc, and Fossil Stores I, as well as Macy's and Macy's Retail.

[2] Plaintiff did not file its request as a motion, but rather as a notice. Given that they are not simply notifying the Court, but rather are seeking action by the Court, Plaintiff's "notice" is construed as a Motion.

$265,736.00, resulting in a final award of $2,391,616.04, plus prejudgment and post-judgment interest, with costs reduced by $54,877.54 for a total of $102,830.92.

## I. Background

The Court assumes the parties' familiarity with the procedural history of this case, but includes below a brief summary of the Court's earlier relevant findings, as well as the Federal Circuit's decision vacating and remanding this case for determination of attorney's fees consistent with its findings.

### A. Sanctions

In the Court's July 2014 Memorandum of Decision it found that the Reiter Declaration, which Plaintiff had filed in support of its motion for a Temporary Restraining Order ("TRO"), was misleading. *Romag Fasteners, Inc. v. Fossil, Inc.*, 29 F. Supp. 3d 85, 105 (D. Conn. 2014) (hereinafter "*Romag I*"), *aff'd*, 817 F.3d 782 (Fed. Cir. 2016), *cert. granted, judgment vacated*, 137 S. Ct. 1373 (2017), *and vacated in part*, 686 F. App'x 889 (Fed. Cir. 2017). The Court sanctioned Romag for this deception.

Specifically, Mr. Reiter's declaration suggested that he had discovered the counterfeit snaps in November by mere happenstance, conflicting with his testimony at trial that "he went to Macy's that day with the express purpose of confirming his suspicions that Fossil was using counterfeit ROMAG snaps in their handbags," and his acknowledgement that he had strong suspicions by late October that counterfeit snaps (the existence of which he had been informed about in May 2010) were being used in Fossil bags. *Id.* Based upon these findings, *inter alia*, the Court concluded that Romag acted in bad faith by delaying its TRO filing until the beginning of the holidays—intentionally sitting "on its rights between late May 2010 and late November 2010 to orchestrate a strategic advantage and improperly obtain emergency injunctive relief on a timetable

of its choosing, not on the irreparability of its harm." *Id.* at 106. Consequently, the Court sanctioned Plaintiff, precluding it "from recovering its expenditures in relation to the prosecution of its TRO." *Id.*

## B. The Court's Original Award of Attorney's Fees

On August 14, 2014, the Court issued its Ruling on Plaintiff's Motion for Attorney's fees, in which it denied Plaintiff Lanham Act fees, while granting attorney's fees under the Patent Act and CUTPA. *See Romag Fasteners, Inc. v. Fossil, Inc.*, No. 3:10CV1827 JBA, 2014 WL 4073204 (D. Conn. Aug. 14, 2014) (hereinafter "*Romag II*").

The Court denied Lanham Act fees based on (1) Fossil's non-willful infringement; (2) the finding that Fossil had not "acted fraudulently or in bad . . . faith" in its non-infringement position; (3) the Court's ruling denying Romag's Rule 50(a) motion on Fossil's non-infringement argument, which precluded a frivolousness finding; and (4) the finding that Fossil's "arguments with respect to non-infringement were not entirely groundless." *Id.* at *5.

However, it held that "based on the totality of the circumstances and a consideration of the factors suggested in *Octane Fitness*, . . . this is an 'exceptional' case within the meaning of the Patent Act and . . . Plaintiff is entitled to recover its reasonable attorney's fees under that statute." *Id.* at *4. The Court found that Fossil's defense "bordered on frivolous," based on the "tenor" of Judge William Young's indefiniteness summary judgment decision and that Fossil "fail[ed] to formally withdraw its remaining invalidity defenses until after the close of evidence," which, the Court stated, "Plaintiff argue[d] necessitated its presentation of evidence with respect to patent validity in its case-in-chief." *Id.* at *3-4. Finally, it reasoned that Fossil "aggressively pursue[d] invalidity counterclaims . . . to prolong litigation and exponentially" increase litigation cost and risk. *Id.* at *4.

With respect to fashioning the appropriate award, the Court found that the CUTPA claim, under which the Court had also awarded fees, "was so intertwined with its other causes of action that the vast majority of its costs and fees cannot be apportioned between the claims at issue in this case." *Id.* at *8. The Court did, however, exclude from the award those costs and fees that were incurred solely in relation to Plaintiff's claim for an award of Defendant's profits under the Lanham Act. *Id.*

Thereafter, judgment entered in favor of Romag and the Court awarded $2,657,352.04 in attorney's fees and $157,708.46 in costs.[3]

## C. Federal Circuit Ruling

The parties appealed and cross-appealed the Court's fee awards, and on August 9, 2017, a majority of the Federal Circuit panel vacated the fee awards and remanded to this Court based upon several key findings.

The Federal Circuit held that this Court should have applied *Octane* to its Lanham Act "exceptional case" determination. *Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1334-36 (Fed. Cir. 2017) (hereinafter "*Romag IV*"). It also faulted the Court's decision not to consider, "in connection with its totality of circumstances analysis, Romag's earlier litigation misconduct," for which the Court had issued sanctions. *Id.* at 1340. Indeed, it held that "the fact that this misconduct has already been sanctioned should be weighed more heavily, rather than be excluded." *Id.*

Additionally, the Federal Circuit held that the Court erred in the following ways:

---

[3] Initially the Court awarded $2,368,494.62 in attorney's fees and 156,632.97 in costs. *See Romag Fasteners, Inc. v. Fossil, Inc.,* No. 3:10CV1827(JBA), 2015 WL 5787019, at *13 (D. Conn. Sept. 30, 2015) (hereinafter "*Romag III*"), *vacated and remanded*, 866 F.3d 1330 (Fed. Cir. 2017). Supplemental fees of $288,857.42 and costs of $1,075.49 were subsequently awarded. [Doc. # 519]

(1) Finding that Fossil had not withdrawn its invalidity defenses until after testimony was complete, which "[wa]s misleading and contradicted by the record." *Id.* at 1338.

(2) Finding as a key factor for awarding fees to Romag "that Fossil declined to abandon [invalidity] defenses until after the trial[,]" as "[t]he record establishes that the defenses were withdrawn before trial." *Id.* at 1336.

(3) Holding that Fossil's indefiniteness defense bordered on frivolous," as the Federal Circuit did "not read Judge Young's opinion to be describing Fossil's indefiniteness defense as 'woefully inadequate' in the sense that Fossil's theory was objectively unreasonable"; or "to have a 'tenor' that indicates that Fossil's indefiniteness defense 'bordered on frivolous.'" *Id.* at 1339.

(4) Finding that the Court's earlier Rule 50(a) Ruling on infringement precluded it from basing an exceptional case ruling on Fossil's argument; but this Court's conclusion that Fossil's noninfringement position did not make the case exceptional was not error because "the [C]ourt also found that Fossil's arguments with respect to noninfringement were not entirely groundless." *Id.* at 1341.

The Federal Circuit "remanded to the district court to consider the Lanham Act and the Patent Act attorney's fees and the claimed expert fees under the correct standard, free of the errors identified" in the Federal Circuit's Ruling. *Id.* at 1341-42.[4]

---

[4] The Federal Circuit also set aside the supplemental fees awarded in connection with the application for attorney's fees. *Id.* at 1341.

## II.    Discussion

On remand, Romag asks that the Court award it attorney's fees under the Lanham Act and that it reinstate its previous award of attorney's fees under the Patent Act, and expert witness fees under the Court's inherent authority. In the event the Court declines to reinstate the award of attorney's fees under the Patent Act, Plaintiff contends that this Court, consistent with its prior decision that was not challenged on appeal, should modify the total fee award to deduct only those fees solely related to Romag's patent infringement claim. Finally, Romag claims entitlement to an award of pre- and post-trial interest on the patent damage award.

### A.  Patent and Lanham Act Fees

The Supreme Court in *Octane Fitness* held that for a case to be an "exceptional case" justifying an award of attorney's fees, a finding of fraud or bad faith is not required. Rather, the case must "simply [be] one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated . . . , considering the totality of the circumstances." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014). While *Octane Fitness* was a Patent Act case, the Federal Circuit anticipated that the Second Circuit would hold that the Lanham Act has the same standard for recovering attorney's fees as the Patent Act. *Romag IV*, 866 F.3d at 1335. Accordingly, the Court analyzes whether Plaintiff is entitled to fees under the Patent and Lanham Acts simultaneously.

Litigation conduct which renders a case exceptional includes, among other things, advancing frivolous or unjustified arguments, or otherwise prolonging litigation vexatiously or in bad faith. *See, e.g.*, *Monolithic Power Systems, Inc. v. O2 Micro Intern. Ltd.*, 726 F.3d 1359, 1366 (Fed. Cir. 2013) (affirming award of attorney's fees in patent case where litigant moved to dismiss its counterclaim on the eve of trial); *Serrano v. Telular Corp.*, 111 F.3d 1578, 1585 (Fed. Cir. 1997)

(affirming award of attorney's fees in patent case based on litigation conduct resulting in needless expense, including failing to stipulate to facts and pursuing a groundless claim).

### 1. Romag's Reformulated Argument for Claiming That Fossil's Conduct Rendered the Case Exceptional

In light of the Federal Circuit's decision, Romag no longer makes several of the arguments it previously advanced. Instead, Romag now contends Fossil's non-infringement defense was frivolous, and relatedly, that Defendants engaged in a "sharp litigation strategy" warranting the award of reasonable attorney's fees and expenses under both the Patent and Lanham Acts. (Pl.'s Mot. to Reinstate [Doc. # 543] at 8-12.)

#### a. Fossil's Non-Infringement Defense

Fossil's non-infringement defense consisted of its assertion "that the batch of magnetic snaps at issue were in fact genuine ROMAG snaps." *Romag IV*, 866 F.3d at 1340-41. After withdrawing its invalidity defense, this was Defendants' sole merits defense pursued at trial. Post-remand, Romag argues that Fossil's challenge to Romag's infringement case was objectively unreasonable because it was based on impermissible speculation, and Fossil's specific knowledge that the magnetic snaps were not genuine. According to Plaintiff, the objective weakness of Fossil's defense to its counterfeiting, which applied with equal force to both Romag's trademark infringement and patent infringement claims, renders this case "exceptional" and supports an award of attorney's fees under the Lanham Act and the Patent Act. (Pl.'s Mot. to Reinstate at 8.)

Defendant argues that even if its defense was not particularly strong and did not prevail, the Court found there was sufficient evidence to permit Defendants to proceed with its argument, implicitly reflecting a view that Defendants' position was not "so objectively unreasonable (as either a legal or factual matter) that no party 'could see an opening . . . through which the

argument[s] could be squeezed.'" *See Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 14- CV-3419 (JMF), 2018 WL 317850, at *2 (S.D.N.Y. Jan. 8, 2018) (citations omitted). Moreover, the Court had already found that Fossil's "arguments with respect to non-infringement were not entirely groundless" and that Fossil had not "acted fraudulently or in bad . . . faith" in arguing Romag had not met its burden of proof on infringement. *Romag II*, 2014 WL 4073204, at *4. The Federal Circuit specifically held that the Court did not err in refusing to consider "this issue as an adverse factor in the totality of circumstances, because [a] party's position on issues of law ultimately need not be correct for them to not 'stand[ ] out,' or be found reasonable." *Romag IV*, 866 F.3d at 1341 (internal quotation marks and citations omitted). The new reasons Plaintiff offers as justification for the Court to reconsider its ruling and hold that the non-infringement argument was unreasonable are not persuasive.

Defendants, having been sued, simply defended themselves in the absence of a settlement, requiring Romag to prove its infringement case, which does not make this case exceptional, nor warrant an award of attorney's fees. *See Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2016 WL 3880774, at *15 (N.D. Cal. July 18, 2016), *aff'd in part, reversed in part on other grounds* — F.3d —, 2016-2520, 2018 WL 341882 (Fed. Cir. Jan. 10, 2018) (denying attorney's fees). "[A]s the accused infringer, [Fossil] was obligated to defend against [Romag's] . . . asserted patent[] and [related] claims. [Fossil] did not choose to bring this lawsuit, but once sued, defended itself in a determined manner." *Id.*, *15.[5] Thus, Defendants' non-infringement defense was not unreasonable

---

[5] Defendant argues that an award of attorney's fees could potentially have the "perverse consequence of deterring defendants from presenting reasonable and appropriate defenses to patent infringement claims for fear of facing additional monetary consequences if unsuccessful." *Veracode, Inc. v. Appthority, Inc.*, 137 F. Supp. 3d 17, 102 (D. Mass. 2015) (citing *Octane*, 134 S. Ct. at 1756 n. 6); *see also Insituform of N. Am. v. Midwest Pipeliners, Inc.*, CIV. A. No. C-3-91-251,

such that this was an exceptional case justifying an award of attorney's fees under the Patent or Lanham Acts.

### b. Sharp Litigation Strategy

Plaintiff now claims for the first time that Defendants engaged in "sharp litigation strategy" by refusing to stipulate to the genuineness of documents produced by Superior, obstructing Romag's effort to prove their authenticity through the deposition of Superior's American counsel, and seeking to preclude admission of Superior's records at trial. (Pl.'s Mot. to Reinstate at 12.)

The challenged documents came from Hong Kong-based third party, Superior, and were not only written in Chinese, but were unsworn out-of-court statements. Fossil had stipulated to the authenticity of Superior documents produced from Defendants' own records (Dupler Decl. ¶7 [Doc. # 550]), but contends that it was not in a position to stipulate to either the authenticity or admissibility of Superior documents Romag received from Superior's U.S. counsel. Defendants argue that Romag could have obviated the admissibility and authenticity issues by deposing Superior's custodian of records at its offices in Hong Kong, but chose not to do so. While the Court ultimately admitted the documents, it did so under the residual hearsay exception, rejecting Romag's contention that the documents were business records. (Tr. of Mar. 5, 2014 Hearing [Doc. # 359] at 65-67.)

Moreover, Plaintiff has not identified any support in the record for its contention that Fossil's counsel "obstructed Romag's effort to prove [the documents'] authenticity through the

---

1992 WL 477083, at *7 (S.D. Ohio Aug. 31, 1992) ("To find this case exceptional would put patent attorneys in an awkward position in which they try to avoid liability under §285 and nonetheless try zealously to advocate client interests." (citing *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1564 (Fed. Cir. 1983))).

deposition of Superior's American counsel," William H. Wilson, III (*see* Pl.'s Mot. to Reinstate at 11-12), and in contrast, Attorney Jeffrey Dupler's declaration avers that Wilson was represented by his own counsel at that deposition and Fossil's counsel did not lodge a single objection, let alone impede the deposition (*see* Dupler Decl. ¶ 7). Defendants urge that "the timing of Romag's new argument speaks volumes about its true view," contending that Romag's failure to raise such purportedly remarkable misconduct two years ago in its original fee application suggests Romag did not always view it as litigation misconduct. (Def.'s Opp'n at 18 (citing *Romag IV*, 866 F.3d at 1339).) The Court finds no support in the record for finding that Defendants engaged in vexatious litigation conduct by refusing to stipulate to the Superior documents, where admissibility was a close call decided only after extensive briefing from both parties, or in any way interfered with Romag's ability to establish the documents' authenticity.

### 2. *Romag's Litigation Misconduct Must be Included in the Analysis*

The Federal Circuit concluded not only that "Romag's misconduct cannot be disregarded on the theory that failure to award fees is equivalent to double-sanctioning Romag," but also "that [because] this misconduct has already been sanctioned[, it] should be weighed more heavily, rather than be excluded, in the 35 U.S.C. § 285 analysis." *Romag IV*, 866 F.3d at 1340. Defendants urge that "[l]itigants who sanctionably lie do not deserve a fee award." (Def.'s Opp'n at 8.)

The Court sanctioned Romag for submitting Reiter's deceitful declaration in support of the TRO, "without a colorable basis" and "in bad faith, i.e., motivated by improper purposes such as harassment and delay." *Romag I*, 29 F. Supp. 3d at 105-06 (citation omitted). Weighing this litigation misconduct more heavily, considering the Court's findings that Fossil's non-infringement argument was not groundless and that its litigation strategy was reasonable, the

Court finds that Fossil's conduct did not warrant fee shifting as an exceptional case under either the Patent or Lanham Acts.[6]

## B. Apportionment

Having found that Romag is not entitled to reinstatement of the fee award under the Patent Act, the Court must decide the sum that should be deducted from the total fee award.[7] Defendants argue that the previous attorney's fee award of $2,657,352.04 should be reduced by at least $720,935 to eliminate compensation for work which pertained only to the patent claim. In response, Plaintiff claims there is no factual basis for this proposed reduction, and instead maintains that the Court should reduce the previous award by only $111,781.81.[8]

---

[6] Plaintiff contends that the basis for the sanction imposed in this case is weakened by the Supreme Court's recent holding in *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC* that "laches cannot be interposed as a defense against damages where the infringement occurred within" the Patent Act's statute of limitations and therefore that Plaintiff's sanctioned conduct should not work to deny it a Patent Act fee award. 137 S. Ct. 954, 967 (2017). However, here the Court's sanction did not involve laches as a defense to Plaintiff's legal claim for patent damages, but instead arose from the Court's evaluation of whether Plaintiff had been entitled to equitable relief in the form of a TRO. Nothing in *SCA* precludes the Court from sanctioning a party for misrepresentations that deprive the Court of "the ability to accurately apply the appropriate standard in considering [a] request for emergency injunctive relief." *Romag I*, 29 F. Supp. 3d at 106.

[7] The Court already denied Romag fees "incurred solely in relation to Plaintiff's claim for an award of Defendant's profits under the Lanham Act" and excluded those from the previous award. *Romag II*, 2014 WL 4073204, at *8.

[8] Plaintiff had two main law firms, Cooper & Dunham LLP ("C&D") and Brenner, Saltzman & Wallman LLP ("BSW"). Plaintiff identifies $132,036.50 in fees for time expended solely on patent issues by C&D, as well as $2,957.50 by BSW, for a total of $134,994. Because the Court earlier reduced each firm's initial award (with most of C&D's reduced by 17%, and 25% for certain fees relating to the fee application, and BS&W's fees reduced by 14%) Plaintiff similarly reduced the total that should be excluded, in order to arrive at the sum of $111,781.81.

### 1. *Legal Standards*

As this Court earlier recognized, "'when certain claims provide for a party's recovery of contractual attorney's fees, but others do not, a party is nevertheless entitled to a full recovery of reasonable attorney's fees if an apportionment is impracticable because the claims arise from a common factual nucleus and are intertwined.'" *Romag II*, 2014 WL 4073204, at *8 (quoting *Total Recycling Services of Connecticut v. Connecticut Oil Recycling Services, LLC*, 308 Conn. 312, 333 (2013)). In its earlier Ruling, this Court held that Romag's "CUTPA claim was so intertwined with its other causes of action that the vast majority of its costs and fees cannot be apportioned between the claims at issue in this case." *Id*.

While the Court is not required to determine a fee award with exactitude, and this determination "should not result in a second major litigation" *see Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the fee applicant must "submit appropriate documentation to meet their burden of establishing entitlement to an award[, and] . . . trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time" *Fox v. Vice*, 563 U.S. 826, 838–39 (2011) (internal quotation marks and citations omitted). Ultimately, the goal "is to do rough justice, not to achieve auditing perfection." *Id*.

### 2. *Attorney's Fees Relating Solely to Patent Claim*

Plaintiff offers Attorney Norman Zivin's Declaration [Doc. # 544], which purports to identify all attorney's fees resulting from time spent solely in pursuit of Romag's patent infringement claim, including such tasks as preparing claim construction briefs, attending *Markman* and motion hearings on patent issues, attending depositions of patent experts, and opposing Fossil's motion for summary judgment based on invalidity of the patent. Defendants

offer myriad theories why Attorney Zivin's declaration lacks credibility and grossly underestimates the amount spent on patent-only billings. (Def.'s Opp'n at 22.)

In support of Defendants' proposed reduction of the fee award by nearly 30 percent, as opposed to Plaintiff's proposed four percent, Defendants make several arguments at a macro level, although they do not specifically challenge any of the time entries listed in the Zivin Declaration as unreasonable or incomplete, nor do they identify entries in C&D's billing records that should have been, but were not, included in their estimation of fees solely related to the Patent Act. They explain that they were not able to parse out these entries because, as the Court had earlier found, Romag's time records, and particularly C&D's, were "block-billed or impermissibly vague as to the tasks performed." *See Romag III*, 2015 WL 5787019 at *9. They argue therefore that because "Romag failed to take care in its billing, the Court should take special care to ensure its CUTPA award does not include patent fees" and "any ambiguity or doubt should be resolved against Romag, because its improper block billing created the problem and it bears the burden of sustaining its fee request." (Def.'s Opp'n at 22.)

Defendants contend that Romag's de minimus estimate of the patent-only fees flies in the face of its statements of record that it was forced to "vigorously defend against Defendants' efforts to invalidate th[e] patent[,]" its primary asset, due to Fossil's "aggressive scorched-earth strategy . . . to invalidate" and "destroy" it. (Pl.'s Application for Attorney's Fees and Costs [Doc. # 451] at 29-30.)[9] They argue that Romag's estimate that it spent just $132,000 of $3 million in total fees

---

[9] Defendants also emphasize that Romag represented to the Court that its counsel divided responsibility and that C&D, because of its expertise, was primarily responsible "for all patent related issues arising in this action, including the defense of counterclaims brought by Fossil and Macy's seeking to invalidate Romag's 126 patent, handling claim construction, handling all expert discovery related to the patent issues, and responding to Defendant's Motion for Summary

solely on patent issues lacks credibility when compared to Romag's billings for other work. "Romag's purported $132,036.50 patent estimate equals just 4.4% of Romag's total billings of $2,983,838.00; and the estimated 277.3 hours is just 3.4% of the 8,182.05 total hours of attorney and paralegal time." (Def.'s Opp'n at 24.) To further illustrate their point, Defendants point out that "[t]he total amount of fees Romag spent on two post-trial memoranda of law was $135,104.75" which "is roughly equal to what Romag claims it spent on its entire litigation of the Patent claims." Defendants note that the Court earlier found that Romag spent nearly $80,000 on several motions to amend to add a section 292 claim, which was excluded from the fee award, and yet Plaintiff now claims that for the remainder of the patent case they expended not even twice that amount.

Significantly, Romag does not list any fees as solely patent-related for the March 24 to April 2, 2014 trial. (Ex. B to the Zivin Decl. at 4.) Yet, contradictorily, as support for its argument that this case was "exceptional," Romag maintained that after February 2014 it was "forced" to "undertake the unnecessary expense of preparing the patent issues for trial, putting on its direct case, and preparing to cross-examine" Fossil's invalidity expert witness, which it had kept on the witness list. (Pl.'s Reply to its Application for Attorney's Fees and Costs at 19.) As Defendant notes, the Court then relied on that contradictory claim to award fees. *See Romag II*, 2014 WL 4073204

---

Judgment on patent issues." (Pl.'s Application for Attorney's Fees and Costs at 24.) Nonetheless, Romag now claims only $132,000 out of the $1.8 million C&D billed was solely related to patent. (Def.'s Opp'n at 23.) Plaintiff represents that "Attorney Zivin and C&D, because of their long-standing relationship with Romag, also took primary responsibility for responding to discovery requests directed to Romag; producing documents on behalf of Romag, defending the depositions of Romag employees, and handling expert discovery of industry professionals who served as expert witnesses." (Pl.'s Application for Attorney's Fees and Costs at 24.)

at *3 ("Defendants also maintained their patent expert on their witness list … which Plaintiff argues necessitated its presentation of evidence with respect to patent validity").

Plaintiff counters that Defendants' arguments ignore the Court's finding that most of the fees could not be apportioned because they were so intertwined with the CUTPA claim. According to Plaintiff, "the primary issues in this case included whether the snaps used in the Fossil handbags were counterfeit, the extent of Fossil's counterfeiting, and the number of Fossil products with counterfeit snaps," all of which "were equally important to all four of Romag's claims." (Pl.'s Reply at 4.) Plaintiff therefore maintains that time spent on those areas, along with time spent on tasks such as preparing and responding to discovery, drafting pretrial submissions, preparing for trial, and attending trial, are so intertwined with Romag's CUTPA claim that the associated patent fees are not excludable. (*Id.*)

To the extent Plaintiff claims the Court cannot apportion activities which were solely patent-focused, but which were billed as part of a greater event, such as trial preparation, or drafting jury instructions, Plaintiff misunderstands the *Total Recycling* holding. It is only where the patent-related activities cannot practicably be separated from the CUTPA claim because they arose from "a common factual nucleus and are intertwined" that the Court is precluded from apportioning those fees and the plaintiff is "entitled to a full recovery of reasonable attorney's fees." *Total Recycling*, 308 Conn. at 333. Here, there are several readily identifiable examples of instances in which Plaintiff failed to account for time that was necessary solely because of their patent claim, simply because the time was entered in the context of other activities which also related to Plaintiff's other claims.

For instance, Plaintiff admits that time spent preparing for the trial testimony of its expert witness, Dr. Udo Schwarz, as well as his examination at trial on the following day, were activities

specific to the patent claim. (Pl.'s Reply at 5-6.) Still, Plaintiff did not separately break out those activities "because counsel were engaged in other trial activities that day and evening in any event." (*Id.* at 6.) Similarly, Plaintiff excluded only a tiny fraction of the attorney's fees relating to the drafting of jury instructions, despite having included over 20 pages of jury instructions on the patent claim, unrelated to CUTPA or any other claims. Such fees must be excluded given that Plaintiffs are not entitled to fees under the Patent Act, and that these activities were not intertwined with Plaintiff's CUTPA claim such that apportionment is impracticable, only that they were billed together with other activities which included work relating to the CUTPA claim.

The Court need not, and will not, attempt to identify each and every instance in which patent-only activities and CUTPA work were entered as a single billing entry. Using the examples cited above, and "tak[ing] into account [its] overall sense of [the] suit," the Court is able to estimate the additional fees that were solely related to the patent claim, but which the Zivin declaration fails to identify and are not included in Plaintiff's proposed reduction of the total award.

Based on Dr. Schwarz's time records, the preparation for trial on March 25, 2014 occupied two hours of his time, and he spent four hours at trial the following day. (Ex. F to Schaefer Aff. [Doc. # 452-7] at 31.) Romag's billing records for March 25 include, *inter alia*, "Day 2 of trial; continued trial prep; meeting with witnesses; internal conferences regarding strategy" for 13.6 hours at a rate of $450/hour and "on trial, Day 2 at New Haven; preparation for trial" at a billing rate of $625/hour for 12.5 hours. (Ex. A (C&D Billing Records) to Zivin Decl. at 102.) On March 26 it lists "on trial, Day 3 at New Haven; preparation for trial" for 13.5 hours at a rate of $625/hour. (*Id.* at 103.) With an average rate of $537.5/hour on the 25th for two hours, and four hours on the 26th at a rate of $625/hour, the Court finds that a reasonable estimate of these fees is $3,575, and

therefore that, after reducing this sum by the 17% C&D's overall fees were reduced by, this sum must be excluded from the Court's previous award.[10]

Moreover, Romag submitted jury instructions that were 117 pages long, with approximately 30 separate patent instructions that comprise over 20 pages, yet Plaintiff incredibly claims that only .4 hours were spent on the patent instructions specifically, including reviewing Defendants' proposed instructions and objections to instructions, and crafting Plaintiff's own objections to Defendants' instructions. Upon review of the billing records, the Court conservatively estimates that over 50 entries include at least a portion of time focused on the jury instructions. These entries, which also include work unrelated to the instructions, total over 180 hours. Even if only a quarter of those hours were actually spent on the jury instructions, and only 17 percent[11] of the time spent on jury instructions was patent specific, the hours spent on patent jury instructions would equal roughly 4.5 hours, rather than the .4 proposed by Romag. Defendants should not be held accountable for C&D's block billing, nor for the common billing practice of noting tasks with a high level of generality. Accordingly, the Court finds that in addition to the .4 hours Romag included in its calculation, another 4.1 hours, at a rate of $460.00, totaling $1,565.38 after the 17% reduction,[12] must be excluded from the initial award.[13]

---

[10] With the 17% reduction the total sum to be excluded is $2,967.25.

[11] This number is based upon the fact that 20 out of 117 pages of the instructions were patent specific.

[12] The total before accounting for the 17% reduction is $1,886.

[13] Because these tasks were performed at a variety of rates, the Court averages together those rates for purposes of estimating the time spent working on patent-only jury instructions for which the Zivin declaration does not account.

In light of these omissions of fees which were billed together with work related to the CUTPA claim, but which were solely relevant to the patent issues, it is evident that Plaintiff's proposed reduction improperly underestimates the sum that must be excluded from the initial award. Nonetheless, the Court's earlier observation that "the vast majority" of the costs and fees were so intertwined they could not be apportioned, *Romag II*, 2014 WL 4073204 at *8, means that Defendants' suggestion that 30% of the awarded fees were specific to the patent claim alone is unconvincing, especially where Defendants identify only two tasks that would not have been necessary but for the Patent Act claim, discussed above, and do not identify any broader issues or litigation activity which were only relevant to Plaintiff's patent claim.

Plaintiff's estimate of $111,781.81, plus the $2,967.25 for fees relating to trial preparation and examination of Dr. Schwarz and $1,565.38 for jury instructions results in a total of $116,314.44, which is 4.3% of the previous award of $2,657,352.04. Because neither Defendants nor the Court are in a position to discern patent-only fees with any precision from C&D's time records, which were "block-billed or impermissibly vague as to the tasks performed," the Court finds that reducing the award by 10% reasonably accounts for fees which related solely to Plaintiff's patent claim, while abiding by its earlier finding that the large majority of the fees were intertwined such that they cannot be separated from the CUTPA claim. *See Romag II*, 2014 WL 4073204 at *8. Therefore, the Court finds that the initial fee award should be reduced by $265,735.00.[14]

**C. Prejudgment Interest[15]**

---

[14] The actual figure is $265,735.20, which the Court rounded to the nearest dollar.

[15] The parties agree that post-judgment interest should run from November 8, 2017 at a rate of 1.53% until the judgment is paid. *See* 28 U.S.C. §1961(a).

In a patent infringement case, there is a presumption that prejudgment interest is awarded as part of the damages. *See General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656-657 (1983) (holding "that prejudgment interest should be awarded under [35 U.S.C.] §284 absent some justification for withholding such as award"). Although pre-judgment interest should ordinarily be awarded, it may be limited or denied "where the patent owner has been responsible for undue delay in prosecuting the lawsuit." *Enzo-Biochem, Inc. v. Applera Corp*, Civil No. 3:04cv929 (JBA), 2014 WL 29126, at *3 (D. Conn. Jan. 3, 2014) (citing *Gen. Motors Corp.*, 461 U.S. at 657).

Defendants argue that no prejudgment interest should be awarded here because Romag unjustifiably delayed filing its lawsuit, causing Fossil substantial economic prejudice. However, because "the withholding of prejudgment interest based on delay is the exception, not the rule[,]" the Court will not deny Romag prejudgment interest altogether. *See Lummus Indus., Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 275 (Fed. Cir. 1988).

Plaintiff, without authority, asserts that a determination of the amount of prejudgment interest is governed by state law. Plaintiff therefore claims prejudgment interest should run from the date of last infringement, about November 22, 2010 (when the Complaint was filed), until entry of the Amended Partial Final Judgment, November 8, 2017, at a rate of 10%. *See* Conn. Gen. Stat. § 37-3a(a). But, because Romag prevailed on its federal claims, prejudgment interest is governed by federal law. *See Ping He (Hai Nam) Co. v. NonFerrous Metals (U.S.A.) Inc.*, 22 F. Supp. 2d 94, 124 (S.D.N.Y. 1998), *vacated on other grounds Ping He (Hai Nam) Co, Ltd. v. Nonferrous Metals (U.S.A.) Inc.*, 187 F.R.D. 121 (S.D.N.Y. 1999) ("Where damages are awarded under a federal statute, it is federal law that determines whether prejudgment interest can or must be awarded to a prevailing party."); *cf. Rhodes v. Davis*, 628 F. App'x 787, 792 (2d Cir. 2015) ("Because the awarding of prejudgment interest is considered a question of substantive law, federal law does not apply to

the calculation of prejudgment interest on supplemental state law claims where . . . a plaintiff does not prevail on any of his federal claims." (internal quotation marks and citations omitted)).

"The rate of prejudgment interest . . . [is] left largely to the discretion of the district court." *Bio–Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986); *see also Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1579–80 (Fed. Cir. 1988). The Court is "guided by the purpose of prejudgment interest, which is 'to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement.'" *Bio–Rad Labs., Inc.*, 807 F.2d at 969 (quoting *Gen. Motors Corp.*, 461 U.S. at 655). The Treasury Bill ("T–Bill") rate "has been accepted and employed by many courts in patent cases as a reasonable method of placing a patent owner in a position equivalent to where it would have been had there been no infringement." *Enzo Biochem, Inc.,* 2014 WL 29126, at *2 (quoting *Cornell Univ. v. Hewlett–Packard Co.*, No. 01–cv–1974, 2009 WL 1405208, at *3 (N.D.N.Y. May 15, 2009) (Rader, Fed. Cir. C .J.) (citing cases)).

Here, the jury's nine-cent reasonable royalty rate nearly doubled the five-cent royalty Romag earned from licensing its patent and trademark, more than compensating Romag for lost royalties and any potential economic loss from not having the cash in hand. Additionally, while "the Court concluded that [Romag's] delay in bringing this suit did not bar it from recovery . . . and now concludes that it does not preclude the awarding of prejudgment interest, it is appropriate for the Court to consider this delay to ensure that it does not result in [Romag] receiving excessive compensation." *See Enzo Biochem, Inc.*, 2014 WL 29126, at *4. Accordingly, prejudgment interest is awarded using the same interest rate set by 28 U.S.C. § 1961 for post-judgment interest: the one-year T-Bill rates for the relevant time period, which is .157%.

Although the parties agree prejudgment interest award should begin running from the date Plaintiff filed its Complaint on November 22, 2010, Defendants contend that it should only run until the date of the Amended Final Judgment, September 22, 2014, because Fossil sent Romag a check in full payment on October 1, 2014, which Plaintiff never cashed. Plaintiff claims it did not cash the check because it did not believe it was the appropriate amount given that the matter was on appeal. The Court finds that prejudgment interest will run only until the date Defendants attempted in good faith to pay the judgment. Thus, Plaintiff is entitled to prejudgment interest in the amount of $416.82.[16]

---

[16] This amount results from taking the total judgment amount of $66,372.75 and applying the rate of .157% per year, for a period of four years (using the start date of November 22, 2010 and the cut-off date of October 1, 2014 results in a period of approximately three years and eleven months).

III.    **Conclusion**

For the foregoing reasons, Plaintiff's Motion seeking to reinstate the Patent Act award of attorney's fees is DENIED and accordingly the Court excludes all fees solely related to patent work from the initial fee award. Therefore, the Court's initial fee award of $2,657,352.04 is reduced by $265,736.00, resulting in a final attorney's fee award of $2,391,616.04 on the CUTPA claim, plus $416.82 in prejudgment interest, as well as post-judgment interest running from November 8, 2017 at a rate of 1.53% until the total judgment is paid. The Court further concludes that Plaintiff is not entitled to costs for its expert witness,[17] and accordingly the previous award of $157,708.46 in costs is reduced by $54,877.54 for a total of $102,830.92 in costs.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 16th day of August 2018.

---

[17] Because the Federal Circuit found that "the district court . . . erred in holding that Fossil's indefiniteness defense bordered on frivolous," it vacated the Court's award of $54,877.54 for Dr. Schwarz's expert witness fees. *Romag IV*, 866 F.3d at 1339, 1341. Plaintiff has not persuaded the Court that Defendants otherwise acted in bad faith with regard to its patent defenses, and therefore reinstatement of these costs is not appropriate and this sum too must be excluded from the initial award.