UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROMAG FASTENERS, INC.,

*Plaintiff*,

v.

FOSSIL, INC., ET AL.,

*Defendants*.

Civil No. 3:10cv1827 (JBA)

April 29, 2021

**ORDER AMENDING THE FINAL JUDGMENT**

**I.     Background**

Romag Fasteners, Inc. ("Romag") owns U.S. Patent No. 5,722,126 on magnetic snap fasteners, which it sells under the registered trademark ROMAG, U.S. Trademark Reg. No 2,095,367. *Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1333 (Fed. Cir. 2017). Fossil, Inc. ("Fossil") designs fashion accessories, including handbags. *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1494 (2020). Romag and Fossil entered into an agreement allowing Fossil to use Romag's snap fasteners in Fossil's various accessories, but Romag later found that the Chinese factory hired to make Fossil's products was using counterfeit fasteners. *Id.* Romag filed this lawsuit against Fossil, and the case ultimately proceeded to a bifurcated nine-day jury trial and two-day bench trial on liability and damages, respectively. (Mem. of Decision [Doc. # 470] at 1.) The jury found Fossil liable for trademark infringement, false designation of origin, state common law unfair competition, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). (*Id.*) The jury made an advisory award of $90,759.36 of Fossil's profits attributed to its trademark infringement under an unjust enrichment theory and $6,704,046.00 of Fossil's profits for trademark infringement under a deterrence theory. (*Id.* at 32.) It also determined that one percent of Fossil's profits from the sale of the handbags at issue was attributable to Defendant's infringement of the ROMAG mark and that Defendant's trademark infringement was not willful. (*Id.*)

1

Following the jury trial, the Court held a bench trial on Fossil's equitable defenses of "estoppel, acquiescence, unclean hands, and laches; the equitable adjustment of the amount of profits awarded by the jury; the calculation of punitive damages; treble damages; attorneys' fees; and the amount of statutory damages to be awarded, as well as Romag's claim for a permanent injunction." (*Id.* at 1-2 (internal quotation marks omitted).) The Court concluded, *inter alia*, that because Fossil's infringement was found not willful, it could not award profits to Romag, citing a Second Circuit holding requiring a showing of willfulness before making such an award. (*Id.* at 39 (citing *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 753 (2d Cir. 1996); *George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1540 (2d Cir. 1992)).) Romag appealed the decision to the Federal Circuit, which affirmed the District Court's ruling. *Romag*, 817 F.3d 782 (Fed. Cir. 2016). The Supreme Court vacated and remanded in light of *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 137 S. Ct. 954 (2017). *Romag Fasteners, Inc. v. Fossil, Inc.*, 137 S. Ct. 1373 (2017). The Federal Circuit issued a *per curiam* order reinstating the aspects of the Federal Circuit's earlier decision and judgment declining to award Fossil's profits under the Lanham Act, which it held were not affected by the Supreme Court's decision in *SCA Hygiene*. (Am. Partial Final J. [Doc. # 539].) Romag again appealed, and the Supreme Court granted *certiorari* on the question of whether a plaintiff in a trademark case can win a profits remedy only after showing that the defendant willfully infringed its trademark. *Romag*, 140 S. Ct. at 1494. The Supreme Court held that although a defendant's *mens rea* is "a highly important consideration" in determining whether an award of profits is appropriate, a showing of willfulness is not an "inflexible precondition to recovery." *Id.* at 1497. The Supreme Court remanded for further proceedings consistent with its opinion. *Id.*

## II. Legal Standard

15 U.S.C. § 1117 of the Lanham Act provides:

> When a violation of any right of a registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action . . ., the plaintiff shall be entitled, . . . subject to the principles of equity, to recover . . . defendant's profits.

"The award of profits is justified by three rationales: (1) to deter a . . . wrongdoer from doing so again; (2) to prevent the defendant's unjust enrichment; and (3) to compensate the plaintiff for harms caused by the infringement." *Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 457 (S.D.N.Y. 2012) (citing *Basch*, 968 F.2d at 1537). In determining whether to award an infringer's profits as part of a recovery, a court must balance equitable factors including, but not limited to: "(1) the degree of certainty that the defendant benefited from the unlawful conduct; (2) the availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating the infringement; (4) any delay by the plaintiff; and (5) plaintiff's clean (or unclean) hands." *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 214 (2d Cir. 2019). A defendant's mental state must be considered in this analysis. *Romag*, 140 S. Ct. at 1497. These factors are not assigned equal weight as "[t]he district court's discretion lies in assessing the relative importance of these factors and determining whether, on the whole, the equities weigh in favor of an accounting [for profits]." *Basch*, 968 F.2d at 1540.

### III. Discussion

Reflecting the factors enumerated in *4 Pillar Dynasty*, the Court will consider how each identified equitable factor and any others it finds relevant apply to the circumstances of this case.

#### A. Equitable Factors

##### 1. Degree of Certainty That the Defendant Benefitted From the Unlawful Conduct

This factor is hotly contested by the Parties. Romag insists that that Fossil "earned several million dollars in profits from selling handbags with counterfeit Romag magnetic snap fasteners" and cites its profits of between $13,540,338 and $16,192,555 on bags that contained counterfeit Romag fasteners. (Pl.'s Mem. [Doc. # 583] at 38.) Fossil, however, states that "the overwhelming and uncontradicted evidence shows that Fossil earned its handbag profits *without any benefit* of the Romag mark on snaps," citing a survey of 839 handbag consumers and expert testimony that Romag's mark "played no role in the purchase of handbags with magnetic snaps." (Def.'s Mem. [Doc. # 585] at 34) (emphasis in original).

Though advisory only, the jury concluded that Fossil did benefit from the infringement and that one percent of the profits it made on the sale of the accused handbags were a result of the use of the ROMAG mark. (Jury Verdict [Doc. # 417]at 2-3.) This finding is supported by evidence from Fossil's expert's survey which showed that "6% of respondents stated that whether there was a brand name printed on the magnetic snap was a reason for purchasing one particular handbag instead of another, and that 2% of respondents stated that the appearance of the brand name on the magnetic snap was the only reason for purchasing one particular handbag instead of another." (Ruling on Post-Trial Mots. [Doc. # 480] at 22.)

Although Fossil claims that the jury's finding of a one percent benefit is *de minimis*, (Def.'s Mem. at 33), this factor does not ask the Court to determine whether the defendant *substantially* benefitted from the misconduct. Rather, it asks the Court to determine whether the defendant obtained *some benefit* from its unlawful conduct. In other words, the analysis is not about the degree of benefit but of the degree of certainty of any benefit.

The Court adopts the jury's reasonable finding that Fossil benefitted from the infringement, albeit to a relatively small degree, and Court concludes that this factor tips in Romag's favor.

### 2. The Availability and Adequacy of Other Remedies

If a remedy at law would adequately compensate a plaintiff for harm, then this factor weighs against an award of profits. *See N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir. 1989). In addition to allowing plaintiffs to recover actual damages, the Lanham Act allows plaintiffs to

> elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of . . . not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or as distributed, as the court considers just.

§ 1117(c). For willful violations, a plaintiff may recover up to $2,000,000 per counterfeit mark. *Id.*

"The option to elect statutory damages provides trademark holders an alternative remedy to actual damages because counterfeiters' records are frequently nonexistent, inadequate or deceptively kept, making proving actual damages in these cases extremely difficult if not

4

impossible." *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426 (S.D.N.Y. 2012). "Statutory damages under § 1117(c) are intended not just for compensation for losses, but also to deter wrongful conduct." *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1220-1221 (S.D. Fla. 2004); *see also Louis Vuitton Malletier and Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002) (writing that courts fashion statutory damage awards to deter wrongful conduct and punish defendants); *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003) (holding that a statutory damages award can exceed actual damages because statutory damages also have a deterrence function).

While Romag contends that, without an award of profits, it will remain uncompensated for the "unquantified harm it undoubtedly suffered as a result of counterfeiting," Fossil emphasizes that Romag affirmatively declined to pursue the statutory damages available to it that were designed to compensate plaintiffs for such unquantifiable harm. (Pl.'s Mem. at 16; Def.'s Mem. at 37.) Fossil argues that Romag should not be "rewarded" with a greater damages award of lost profits because it declined to pursue an appropriate remedy at law and that the Court should consider the availability of statutory damages in assessing this factor. (Def.'s Mem. at 37-38.)

In a case brought under the Copyright Act, the Third Circuit held that given the plaintiff's decision to "abandon[] its request for statutory damages[,] . . . [the] lack[ of] an adequate remedy at law . . . cannot bolster its case for equitable relief." *TD Bank N.A. v. Hill*, 928 F.3d 259, 282-283 (3d Cir. 2019). This is because "where an adequate remedy at law exists, 'the party seeking redress *must* pursue it.'" *Id.* (quoting *Parker v. Winnipiseogee Lake Cotton & Woolen Co.*, 67 U.S. 545, 551 (1862)) (emphasis added). So although TD Bank's injury "[was] not easily quantifiable," it was compensable due to the availability of statutory damages and thus there was an adequate remedy at law.

Although *TD Bank* invoked the Copyright Act, not the Lanham Act as here, the statutory damages provisions of the laws are nearly identical and the equitable analyses the same. *Compare* § 1117(c) ("In a case involving the use of a counterfeit mark[,] . . . the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits . . ., an award of statutory damages.") *to* § 504(c) ("[T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award

5

of statutory damages for all infringements involved in the action."). Here, Romag declined to pursue a statutory damages award. Although it was Romag's choice to do so, the Court will not reward it for foregoing an award specifically designed to compensate and deter in cases like this with difficult-to-quantify damages by finding this factor in Romag's favor. Accordingly, this factor weighs against an award of profits.

### 3. The Role of the Defendant in Effectuating the Infringement

This factor calls on the Court to examine the defendant's *mens rea* in engaging in the infringing activities. In *Romag*, the Supreme Court held that "[a] trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate," though it is not an "inflexible precondition to recovery." 140 S. Ct. at 1497.

"The factors that support a finding of willfulness in a Lanham Act case mirror those that apply in suits brought under the Copyright Act, 17 U.S.C. § 504(c): a plaintiff must show '(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard . . . or willful blindness.'" *4 Pillar Dynasty*, 933 F.3d at 209-210 (quoting *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)).

At trial, the jury found that Romag failed to prove by a preponderance of the evidence that Fossil's trademark infringement was willful. (Verdict at 2.) The jury was instructed that "[t]o prove willfulness, the plaintiff must show: (1) the defendants were actually aware of the infringing activity, or; (2) that the defendants' actions were the result of willful blindness. Willful blindness means the defendants knew they might be selling infringing goods, but nevertheless intentionally shielded themselves from discovering the truth." (Jury Instructions [Doc. # 440] at 24.) However, the jury was also instructed that to award profits under the deterrence rationale, which the jury did on an advisory basis, "Romag must show that defendants demonstrated a callous disregard of the known rights of Romag as a mark holder. In considering whether defendants engaged in such callous disregard of Romag's rights, you should consider all the circumstances presented in this case, including whether the defendants turned a blind eye to the use of counterfeit snap fasteners. (*Id.* at 38-39.)

Romag posits that the jury's award of profits, despite its verdict that Fossil did not act willfully, is "sufficient to demonstrate that Fossil acted with willful blindness." (Pl.'s Mem. at 21.)

6

The Court, however, already found that "the evidence at trial at most could have supported a finding that Fossil was negligent, not that it acted in reckless disregard, with willful blindness, or with actual knowledge of Superior's purchases of counterfeit snaps." *Romag*, 2014 WL 3895905, at *7 (D. Conn. Aug. 8, 2014). Romag offers no reason why the Court should revise its prior factual finding that Fossil was at most negligent, particularly since the Court already had the jury's advisory verdict at the time it made its finding. The Court is in no better position now to make factual findings than it was seven years ago. In maintaining its prior factual finding, the Court concludes that Fossil was, at most, negligent in its infringement, and this factor therefore weighs against an award of profits.

    4. **Delay by the Plaintiff**

Romag delayed commencement of this suit from June 2010, when it discovered the infringement, to November 2010, just a few days before Black Friday, the unofficial beginning of the holiday shopping season. (Mem. of Decision at 18-19.) These circumstances led the Court to conclude that "Plaintiff carefully timed this suit to take advantage of the imminent holiday shopping season to be able to exercise the most leverage over Defendants in an attempt to extract a quick and profitable settlement, as it had done twice before in the past three years." (*Id.* at 19.) The Court accordingly found that Romag's delay would be considered "as a factor in reducing the jury's advisory award of profits when it performs the equitable adjustment of that award." (*Id.* at 24 (citing *Basch*, 968 F.2d at 1540).) Since this avoidable delay failed to mitigate Plaintiff's damages and caused economic harm to Fossil, this factor weighs against an award of profits to Romag.

    5. **Plaintiff's Unclean Hands**

In its memorandum of decision, the Court concluded that although Fossil established its laches defense, it failed to establish a defense of unclean hands because Romag did not engage "in any fraudulent or misleading conduct with respect to" its mark. (Mem. of Decision at 14.) In other words, although Romag unreasonably delayed commencement of its suit and submitted a false declaration to obtain a temporary restraining order, (*id.* at 12), this conduct involved only the process of the litigation itself, including misleading trial testimony, (*id.* 19), rather than the registration or use of the ROMAG mark, (*id.* at 14.) The significance of this distinction is well-recognized in the caselaw. *See Dunlop-McCullen v. Local 1-S*, 149 F.3d 85, 90 (2d Cir. 1998) (holding

that the doctrine of unclean hands requires a plaintiff to "have acted fairly and without fraud or deceit *as to the controversy in issue*") (emphasis added); *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 429 (S.D.N.Y. 2010) ("[I]t is well settled in trademark law that the defense of unclean hands applies only with respect to the right in the suit.") (internal quotations omitted).

Fossil urges that, despite the Court's finding that Romag's misconduct did not go to the substance of the case, this factor should weigh against Romag in equitable balancing. (Def.'s Mem. at 45.) Fossil cites the Federal Circuit's decision in this case which held that "the district court erred in declining to consider . . . Romag's earlier litigation misconduct" in awarding attorney's fees to Romag. *Romag*, 866 F.3d at 1340. According to Fossil, that the Federal Circuit directed this Court to consider Romag's prior litigation misconduct in determining whether to award attorney's fees means that this Court should now also consider that misconduct in determining whether to award profits. But this Court's rationale for initially awarding attorney's fees to Romag was different from its reasoning that Fossil's unclean hands defense failed as a matter of law. Indeed, the Federal Circuit's opinion never uses the phrase "unclean hands" as it was not assessing the validity of the affirmative defense. In its prior decision awarding Romag attorney's fees, this Court expressed concern that Romag would be "double sanctioned" if its misconduct weighed against an award of fees as the Court had already concluded that Plaintiff may not recover fees in connection with the TRO. *Id.* The Federal Circuit explained that since the test for denying attorney's fees required the Court to evaluate the totality of the circumstances, the fear of double-sanctioning was not sufficient to justify disregarding Romag's misconduct. *Romag*, 866 F.3d at 1340. The same reasoning does not apply here, where the concern is that Romag's conduct does not fall within the scope of conduct captured by the unclean hands as a matter of law, since Romag's misconduct only related to its filing of the suit and not the trademark itself.

Since the Court already concluded that Romag's conduct does not amount to unclean hands, this factor weighs in favor of an accounting of profits. Moreover, the misconduct about which Fossil complains will still be considered in the equitable analysis, just under the delay factor rather than the unclean hands factor.

### 6. Other Equitable Considerations

The Court is not limited to considering only the equitable factors enumerated in *4 Pillar Dynasty*. Rather, the Second Circuit explained that the enumerated factors were only a floor, not a ceiling. *4 Pillar Dynasty*, 933 F.3d at 214 (holding that the equitable factors "include, but are not limited to," those enumerated).

Fossil argues that, at most, it should be required to disgorge profits directly attributable to its infringement. (Def.'s Mem. at 32-33.) Since the jury found that only 1% of Fossil's handbag profits were a result of Romag's mark and that an appropriate disgorgement award under an unjust enrichment theory was $90,759.36, Fossil maintains that any disgorgement should be capped at that amount because "Fossil should not be made to disgorge profits that it earned from factors other than the obscure Romag mark." (*Id.*)

Romag, however, maintains that attribution is totally irrelevant when considering an appropriate disgorgement award under a deterrence theory. (Pl.'s Mem. at 39.) In support of its position, Romag cites Judge Young's earlier opinion in this case where he held that the deterrence rationale does not implicate the attribution limiting principle since the singular focus is on deterring misconduct, regardless of whether that misconduct was profitable. *Romag*, 979 F. Supp. 2d at 282. Judge Young noted that the Second Circuit held that "an accounting for profits is available even if a plaintiff cannot show actual injury or consumer confusion, if the accounting is necessary to deter a willful infringer from doing so again." *Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 71-72. Similarly, a district court awarded profits to a plaintiff whose mark was infringed even where those profits were not attributable to the infringement because "where infringement is done knowingly and with callous disregard of the rights of a mark holder, all the profits of such activity are awardable although the use of the infringing name may not have contributed causally to the sales or profits." *Stuart v. Collins*, 489 F. Supp. 827, 831 (S.D.N.Y. 1980).

But Judge Young's holding is in conflict with Romag's position that "attribution is *irrelevant* to an award of profits based on deterrence." (Reply at 11 (emphasis added).) Rather, Judge Young found that attribution is not an absolute ceiling on recovery of profits. *See Romag*, 979 F. Supp. 2d at 282 ("[W]hen awarding profits according to the deterrence rationale, the Court is not bound by the rule that defendants' profits must be attributable to the plaintiff's mark, but is free to fashion the award based on what is necessary and appropriate to deter the infringer . . . and other potential

9

infringers.") This is consistent with other caselaw in the Second Circuit. In *L & L Wings*, for instance, the district court held that the plaintiff did not meet its burden of showing that disgorgement of profits was necessary to deter Defendants from continued use of the trademark "[g]iven that profits [were] overwhelmingly attributable to factors other than the holdover use of the Mark and the availability of a liquidated damages provision." *L & L Wings, Inc. v. Marco-Destin Inc.*, 756 F. Supp. 2d 359, 367 (S.D.N.Y. 2010). Such a consideration also comports with the equitable principle of preventing a windfall judgment for either party. *See, e.g.*, *Basch*, 968 F.2d at 1540 ("[A]n accounting [of profits] may overcompensate for a plaintiff's actual injury and create a windfall judgment at the defendant's expense.") It also allows courts to adequately deter trademark infringement of component parts that are functionally essential, but not necessarily individually very valuable. With a strict attribution cap on disgorgement, using counterfeit components could end up being cost-effective such that there would be "no incentive to take reasonable actions to prevent the use of counterfeit components" without the potential for greater disgorgement. (Reply at 18.) Allowing consideration of profits attributed to the infringement enables courts to fashion a disgorgement award adequately tailored to the particular circumstances of a case.

The Court concludes that this factor favors an award of profits that goes beyond strictly that which is attributable to Fossil's infringement. Romag holds a trademark for a low-cost handbag component, a magnetic snap fastener, that has a difficult-to-quantify value as to the product as a whole. An award capped at attribution runs the risk of inadequately deterring component part infringers. But like any equitable factor, this must be balanced among the numerous equitable considerations at issue.

### B. Balancing the Equities

Here, Fossil's *mens rea* was, "at most, negligent" which suggests that a lower penalty may be needed to deter such infringing behavior of Fossil and its peers. *See Romag*, 140 S. Ct. at 1497 ("[A] defendant's mental state is relevant to assigning an appropriate remedy.") This is "a highly important consideration in determining whether an award of profits is appropriate" and thus weighs strongly against a high disgorgement award. *Id.* Moreover, Romag engaged in chicanery in litigating this case by delaying commencement of this lawsuit to maximize its leverage over Fossil and made misrepresentations to the Court which should not be rewarded by an award that

10

substantially exceeds its actual damages. This is particularly true in light of the fact that Romag forewent statutory damages which were designed to compensate plaintiffs in situations just like this where harm is difficult to quantify (as is often the case with trademarks of smaller component parts) but where the infringement needs to be deterred. Again, Romag will not be rewarded for "gambling" and pursuing a more uncertain, but potentially higher, disgorgement award where a remedy at law would have adequately compensated it, particularly as it smacks of its earlier gamble in delaying commencement of its suit to get a settlement advantage. However, some profits would reflect the jury's finding that Fossil did benefit somewhat from its infringement.

In recognition of these considerations, the amount of profit the jury attributed to Fossil's infringement, $90,759.36 is adequate to deter such infringement in the future while preventing Romag from receiving a windfall and being rewarded for its litigation misconduct.

### IV.    Conclusion

In balancing the equities, the Court awards Romag $90,759.36 in disgorged profits. The Clerk is directed to amend the final judgment to add this amount, bringing the final judgment against Fossil to $132,622.11.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of April 2021.